568 P.2d 1107

**The STATE of Arizona, Appellee,**

v.

**Michael Joseph DONOVAN, Appellant.**

**No. 2 CA–CR 1036.**

Court of Appeals of Arizona, Division 2.

May 23, 1977.

Rehearing Denied June 29, 1977.

Review Denied Sept. 8, 1977.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer III and Georgia B. Ellexson, Asst. Attys. Gen., Phoenix, for appellee.

John D. Kaufmann, Tucson, for appellant.

## OPINION

RICHMOND, Judge.

After a trial to the court appellant was found guilty of unlawful possession of a narcotic drug and unlawful possession of marijuana for sale and was placed on probation for five years. He raises five points on appeal, none of which merits reversal. The pertinent facts are as follows.

On June 13, 1976, Carroll Ross telephoned the police and asked that they accompany her to 4758 South Primrose in Tucson so that she could collect certain items of personal property. Ross told the officers that she had been living with appellant for a month at the Primrose address but was now afraid of him because she had been "slapped around" on both the previous evening and the day she requested police assistance.

Two police officers accompanied Ross to appellant's residence. One of the officers testified that Ross stated, "Let me go in the house first, wait a minute and then come in." Ross then entered the house while the officers followed closely. The officers met appellant at the door, stepped inside the residence and explained that they had entered the house at the request of Carroll Ross to "keep the peace." Appellant asked the officers to leave but his request was ignored. Shortly thereafter the officers observed a scale, a box of baggies and marijuana debris on the dining room table. On closer inspection, they saw narcotics paraphernalia on the kitchen stove, i. e., a razor blade, two vials, a mirror and a green folded paper. Appellant was arrested and advised of his rights. The officers then obtained a telephonic search warrant and subsequently discovered marijuana in a room of the house.

■ Appellant's initial contention is that the warrantless search of the house violated the Fourth Amendment in that he never gave consent to the police to enter the premises. In our opinion the facts do not create a consent-to-search problem. Indeed, the officers entered the premises to keep the peace and not to search. We perceive the pertinent question to be whether the officers were justified in the intrusion and thus had a right to be in a position to observe the paraphernalia in plain view. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *State v. Warness*, 26 Ariz.App. 359, 548 P.2d 853 (1976). Once lawfully inside, an officer is not required to close his eyes. *State v. Warness, supra.*

■ The officers had a legitimate reason for being on the premises unconnected with a search directed against appellant. Ross had been living at the residence for a month and had asked the officers to protect her from appellant while she retrieved her personal belongings. Although the evidence is in conflict, there was testimony that Ross had paid part of the rent. As it appears that Ross shared the residence jointly with appellant and had requested police protection for herself, we believe the police officers were lawfully in the residence at the time the narcotics paraphernalia was observed. They would have been remiss in their duty if they had remained outside the house, waiting to see if a further assault would take place.

■ Appellant next urges that even assuming the officers were lawfully in the residence, the search warrant was issued without probable cause. At the suppression hearing appellant contended that a search had occurred prior to the warrant being obtained, and that all evidence obtained following the invalid entry should have been suppressed. Appellant waived any allegation of error relating to the search warrant by failing to argue it below. *See Porter v. Eyer*, 80 Ariz. 169, 294 P.2d 661 (1956). However, the paraphernalia in plain view was sufficient cause for issuance of the warrant to search the premises for narcotics.

■ Appellant's third contention is that the conditions of probation were not related to the offenses which he committed. Specifically, he contests the conditions which order him to (1) live with his parents; (2) not be out after 10:00 p.m. for a period of eight months; (3) continue his education and seek employment and (4) not associate with Carroll Ross.

■ Rule 27.1, Arizona Rules of Criminal Procedure, 17 A.R.S., permits the sentencing court to impose such conditions as will promote rehabilitation. In *State v. Smith*, 112 Ariz. 416, 419, 542 P.2d 1115, 1118 (1975), the Supreme Court stated:

**212**

"Probation is a matter of legislative grace. It is a sentencing alternative which a court may use in its sound judicial discretion when the rehabilitation of the defendant can be accomplished with restrictive freedom rather than imprisonment. The court can surround probation with restrictions and requirements which a defendant must follow to retain his probationary status."

Of necessity, the trial court must be given substantial latitude in such matters in light of the uncertainty as to how rehabilitation is actually accomplished. *United States v. Consuelo-Gonzalez,* 521 F.2d 259 (9th Cir. 1975).

We believe that the first three conditions contribute to both appellant's rehabilitation and the protection of the public. They provide for a modicum of supervision over appellant's activities and are intended both to prevent future criminal activity and to facilitate appellant's entry into a law-abiding society. The condition pertaining to appellant's association with Carroll Ross equally bears upon his rehabilitation and the crime committed. Ross initially was appellant's co-defendant and was charged with the drug offenses. Further, she was living at the residence where the drugs were located, and their relationship was stormy. The trial court believed that association with Ross would have a deleterious effect on appellant, and we cannot say that the court erred.

■ Appellant's fourth contention is that the state failed to prove that he possessed a "usable" quantity of cocaine. At trial, the criminalist characterized the substance as "very good cocaine" and stated that it was "definitely a usable quantity." Appellant argues, however, that no evidence was submitted pertaining to usability under "the known practices of narcotics addicts" in compliance with *State v. Moreno,* 92 Ariz. 116, 374 P.2d 872 (1962). We do not believe that additional testimony was required.

In *Moreno,* a police chemist testified that he had analyzed four cotton wads and determined that they contained .2 milligrams of heroin in the form of heroin hydrochlo-

ride. This is in marked contrast to the 68 milligrams discovered in the instant case with an excess of 50% concentration of cocaine. We believe that *State v. Quinones,* 105 Ariz. 380, 465 P.2d 360 (1970) is apposite. In *Quinones* testimony was introduced that .36 milligrams of heroin " 'could be effectively used as a narcotic heroin.' " The defendant suggested that there should have been testimony as to whether the substance was usable " 'under the known practice of narcotics users.' " The court, citing *Moreno,* found that additional testimony was not required, stating:

"Here the narcotic substance was found in a packet, lying on a table. Moreover there was expert testimony explaining how the substance in the packet could be placed in a form for injection by narcotics users. In addition, the packet itself, containing the actual substance in its original form, was admitted into evidence and shown to the jury." 105 Ariz. at 383, 465 P.2d at 363.

In the case *sub judice* the cocaine was found in a folded green paper lying on a mirror next to a razor blade and two glass vials, one with a spoon connected, giving rise to the inference that the cocaine was usable under the known practice of narcotics users. Moreover, counsel for appellant in successfully objecting to the criminalist testifying about the customary packaging of cocaine, or the basis for his opinion in finding that the cocaine was a usable amount, stated:

"I am going to object, he has testified to it being a usable amount. What he bases the opinion on, I don't think is what is relevant or material."

This case does not fall within the hypothetical fact situation set forth in *State v. Quinones, supra,* where the court envisioned special problems in a conviction for possession of narcotics based on a small amount of a narcotic found in a vacuum cleaner sweeping. *See State v. McGuire,* 16 Ariz. App. 346, 493 P.2d 513 (1972). We believe that use of the words "under the known practice of narcotics users" is not required where the import of the testimony, con-

sidered with the other evidence conveys the same meaning.

Lastly, appellant urges that the state failed to prove actual or constructive possession of the marijuana. Again, we disagree.

 The crime of possession of narcotics requires physical or constructive possession with actual knowledge of the presence of the narcotic substance. *Carroll v. State,* 90 Ariz. 411, 368 P.2d 649 (1962).

> "Constructive possession is generally applied to those circumstances where the drug is not found on the person of the defendant nor in his presence, but is found in a place under his dominion and control and under circumstances from which it can be reasonably inferred that the defendant had actual knowledge of the existence of the narcotics. Exclusive control of the place in which the narcotics are found is not necessary."

*State v. Villavicencio,* 108 Ariz. 518, 520, 502 P.2d 1337, 1339 (1972)

Constructive possession may be proved by circumstantial evidence. *State v. Ballinger,* 19 Ariz.App. 32, 504 P.2d 955 (1973). Here, the Primrose Street residence was leased in appellant's name, and he had paid at least part of the rent. He was living in the house at the time the marijuana was found and was present when the police entered the premises. The marijuana, in baggies and in brick form, was found in a front east "bedroom" along with other items, and a partial brick of marijuana was found on the center of the "bedroom" floor. Personal papers bearing appellant's name were found in the front east room and throughout the house. Further, only appellant's bedroom actually contained a bed, while the "bedroom" where the marijuana was found contained only shelves. In summation, the furniture and personal effects indicated to the police officers that only one person occupied the residence.

We believe that these facts, taken together, were sufficient to establish that appellant knowingly possessed and exercised dominion and control over the marijuana. *See State v. Villavicencio, supra;*

*State v. Laurino,* 108 Ariz. 82, 492 P.2d 1189 (1972); *State v. Ballinger, supra.* Even assuming that other persons may have lived in the residence, as appellant contends, possession may be jointly by two or more persons. *State v. Saiz,* 106 Ariz. 352, 476 P.2d 515 (1970).

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.