[Crim. No. 4360. Fifth Dist. Sept. 24, 1979.]

In re BARBARA WHITE on Habeas Corpus.

## Counsel

Melvin Nitz, Public Defender, and Katherine Hart, Deputy Public Defender, for Petitioner.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and Wm. George Prahl, Deputy Attorneys General, for Respondent.

## Opinion

**HOPPER, J.**—In this habeas corpus proceeding petitioner (White) seeks to be free from certain conditions of probation imposed on her as a result of her plea in municipal court to a violation of Penal Code section 647, subdivision (b), soliciting an act of prostitution, which took place on November 14, 1978. In granting probation to White for a two-year term the trial court imposed, and White accepted, inter alia, the following condition:

4. Not to be present within the following designated areas at any time, day or night, or be present upon either side of any street which is a border of such area:

Clinton Avenue on the north, Olive Avenue on the south, North Parkway Drive on the west, and Weber on the east. (North Control Area 1.)

Fresno Street on the north, Ventura Street on the south, "E" Street on the west, and "H" Street on the east. (Central Control Area 2.)

East California Avenue on the north, West Church Avenue on the south, Golden State on the west, and South East Avenue on the east. (South Control Area 3.)

As part of the written conditions White received a map of the three control areas. (For convenience these areas are sometimes hereafter referred to as "map areas.")

The municipal judge asked White if any condition would constitute a hardship. White told the judge that she had been living within one of the "map areas" for approximately three months. She was given three weeks to move out of the "map areas" which she did. An additional condition of probation was that White perform a certain amount of community service. The facility at which she was to perform this community service was within one of the "map areas" and consequently she was reassigned to another facility.

While on probation White was arrested January 5, 1979, on a charge of solicitation. While released on bail on that charge she was observed on January 18, 1979, parked alone on a street in one of the "map areas." On January 25, 1979, she was sentenced to 90 days for violation of probation. On February 5, 1979, she pled guilty to the January 5, 1979, charge and was sentenced to a 90-day jail term to run concurrently with the time received on the revocation of probation. The superior court denied her petition for habeas corpus as to the map condition.

Statistics introduced at the habeas corpus hearing in the superior court established that the three map areas constituted major areas of arrest for prostitution activity in the City of Fresno. A fourth area of prostitution activity existed along Blackstone Avenue (which was *not* in any map area) and an increase in such activity was noted as occurring after restriction from the "map areas" was utilized as a condition of probation.

White claimed that she had friends or relatives who lived in map area No. 1, and that, furthermore, before probation she had patronized three restaurants within the same map area. She further claimed that before probation she took the Greyhound bus frequently which she was unable to do under probation because the depot is within map area No. 2. White also testified that it was most difficult for her to take her children to the local park and zoo because it bordered one of the "map areas."

Officer Robert Rodriguez, a detective in the vice division with the Fresno Police Department, testified that since the "map" was imposed in July of 1978 the "visibility of prostitutes on the street is down." Additionally, Rodriguez stated that the actual crimes reported to the Fresno Police Department are down, as far as crimes that are normally associated with prostitution activity. Rodriguez also testified that a number of persons he knew to be prostitutes are no longer seen in the "map area"; instead, they are all seen in another area of town.

In terms of enforcement of the "map" Rodriguez said that if a person who is on formal probation for soliciting prostitution is seen in this area he would make an arrest without a warrant. The only reason for the arrest would be that person's presence in a proscribed area.

White contends that the map condition violates her rights of free speech, free association, privacy, her right to be free of unreasonable seizures, her rights to travel, and that the condition does not comport with the California probation law and that it is an improper banishment.

The relevant statute is Penal Code section 1203.1 which provides in pertinent part: "The court . . ., in the order granting probation, may suspend the imposing, or the execution of sentence . . . upon such terms and conditions as it shall determine. [¶] The court may impose and require any . . . *reasonable* conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from such breach and generally and specifically for the reformation and rehabilitation of the probationer, . . ." (italics added.)[1]

 Under that section a sentencing court has broad discretion to describe conditions of probation to foster rehabilitation and to protect the public to the end that justice may be done. (*People* v. *Richards* (1976) 17 Cal.3d 614, 619 [131 Cal.Rptr. 537, 552 P.2d 97]; *In re Martinez* (1978) 86 Cal.App.3d 577, 580 [150 Cal.Rptr. 366]; *People* v. *Keller* (1978) 76 Cal.App.3d 827, 831 [143 Cal.Rptr. 184].) In the *Keller* case, the court commented upon this discretion in probation sentencing by stating: "The

---

[1]ABA Project on Standards for Criminal Justice, Standards Relating to Probation, standard 3.2(b), in referring to the determination of conditions of probation provides in part: "They should be reasonably related to his rehabilitation and not unduly restrictive of his liberty . . . ." (Derived from Model Pen. Code (Proposed Official Draft 1962) § 301.1(2)(l).) As the commentary to standard 3.2(b) at page 48 says: ". . . the condition must achieve a balance between oppression and necessity, between interference and utility."

discretion granted is not boundless. In the first place, the authority is wholly statutory; the statute furnishes and limits the measure of authority which the court may thus exercise [citations]. [¶] Secondly, the discretion to impose conditions of probation as granted by Penal Code section 1203.1 is further circumscribed by constitutional safeguards. Human liberty is involved. A probationer has the right to enjoy a significant degree of privacy, or liberty, under the Fourth, Fifth and Fourteenth Amendments to the federal Constitution [citations]." (*People* v. *Keller, supra,* 76 Cal.App.3d 827 at p. 832.)

■ Quoting from the landmark case of *People* v. *Dominguez* (1967) 256 Cal.App.2d 623, 627 [64 Cal.Rptr. 290], our California Supreme Court has set out the standard in *People* v. *Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545] as follows: "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.]"

There is an overall requirement of reasonableness in relation to the seriousness of the offense for which a defendant is convicted (*People* v. *Keller, supra,* 76 Cal.App.3d 827, 839-840). ". . . The Constitution, the statute, all case law, demand and authorize only 'reasonable' conditions, not just conditions 'reasonably related' to the crime committed." (*Keller,* at p. 839.)

Careful scrutiny of an unusual and severe probation condition is appropriate (*United States* v. *Pastore* (2d Cir. 1976) 537 F.2d 675, 681).

■ The fact that a defendant has the right to refuse probation does not preclude attack on an improper term of probation by appeal or application for a writ of habeas corpus. (*In re Mannino* (1971) 14 Cal.App.3d 953, 959 [92 Cal.Rptr. 880, 45 A.L.R.3d 996] and cases cited therein.) "Where a condition of probation requires a waiver of precious constitutional rights, the condition must be narrowly drawn; to the extent it is overbroad it is *not* reasonably related to the compelling state interest in reformation and rehabilitation and is an unconstitutional restriction on the exercise of fundamental constitutional rights." (*People* v. *Mason* (1971) 5 Cal.3d 759, 768 [97 Cal.Rptr. 302, 488 P.2d 630]; *In re Allen* (1969) 71 Cal.2d 388, 391 [78 Cal.Rptr. 207, 455 P.2d 143].)

■ Applying the above rules of law to the instant case, we conclude that the condition in question is unreasonable. The map condition may have some relationship to the crime of soliciting. However, a blanket prohibition against being in a designated area of Fresno "anytime, day or night," appears to be unduly harsh and oppressive. While we do not suggest that the offense of soliciting for prostitution is limited to the nighttime hours in spite of the oft used phrase "ladies of the night," we do note that the events resulting in the arrest for revocation of probation took place at a time of darkness and that the evil to be eliminated by the statute, i.e., "streetwalking," is more prevalent in the later hours of the day. Undoubtedly even practitioners of prostitution have particular or usual "business" hours.

Mere presence at a particular place, without more, does not amount to solicitation. Nor, without more, is " 'waving to a passing vehicle, nodding to a passing stranger, or standing on a street corner in a miniskirt' " (*People* v. *Superior Court (Hartway)* (1977) 19 Cal.3d 338, 346 [138 Cal.Rptr. 66, 562 P.2d 1315]).[2] There are simply innumerable situations in which a probationer could be in the map area which are unrelated to prostitution. The condition relates to conduct which is not criminal. Many perfectly legal activities are covered by this condition which have no relationship whatsoever to soliciting (cf. *People* v. *Arvanites* (1971) 17 Cal.App.3d 1052, 1063 [95 Cal.Rptr. 493], striking as too broad a prohibition on picketing and related activities). City buses, the Greyhound bus and taxicabs pass through the various map areas. Technically, being engaged in a passive activity such as being a mere passenger in public transportation or private transportation would be a violation of the condition. In some regards the condition may be related to future criminal conduct. However, the condition is too broad in proscribing every type of activity. Keeping White out of the map area will have a minimal effect on future criminal conduct except possibly in that particular area. As previously noted, there was prosecution testimony in the superior court hearing that this type of probation condition only moves solicitors to other areas of Fresno. Unlike conditions proscribing hitchhiking or the frequenting of specific places (such as bars, pool rooms, etc.), this condition is simply too broad. There is little factual nexus between the proscribed activity and future criminality. Furthermore, as *People* v. *Keller, supra,* 76 Cal.App.3d 827, points out at page

---

[2] The evidence at the superior court hearing demonstrated that a distinct ritual was employed in these areas to solicit. Rodriguez testified that there are two primary methods used to solicit prostitution in Fresno. In one area the solicitor hitchhikes along the side of the road. In the other area the solicitor sits in a parked car which is faced a certain direction on a certain street with the parking lights on.

840: ". . . a reasonable condition of probation is not only fit and appropriate to the end in view but it must be a *reasonable* means to that end. Reasonable means are moderate, not excessive, not extreme, not demanding too much, well-balanced. (Webster's Third New Internat. Dict., p. 1892; Black's Law Dict., p. 1431.)" (Italics in original.)

The condition in question is so sweeping and so punitive that it becomes unrelated to rehabilitation. There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances and on its total atmosphere.

██ In this case the matter of reasonableness is intertwined with constitutional issues. We conclude that the condition does not pass constitutional muster. White's contention that there is a constitutional right to intrastate travel is valid. The Attorney General is correct that the rationale behind *Shapiro* v. *Thompson* (1969) 394 U.S. 618, 629-630 [22 L.Ed.2d 600, 612, 89 S.Ct. 1322, 1329], is that interstate travel is a necessary element of a federal union.[3] ██ We conclude that the right to intrastate travel (which includes intramunicipal travel) is a basic human right protected by the United States and California Constitutions as a whole. Such a right is implicit in the concept of a democratic society and is one of the attributes of personal liberty under common law. (See 1 Blackstone, Commentaries 134; U.S. Const., art. IV, § 2 and the 5th, 9th and 14th Amends.; Cal. Const., art. I, § 7, subd. (a) and art. I, § 24, which provides:

"Rights guaranteed by this Constitution are not dependent on those guaranteed by the United States Constitution.

"This declaration of rights may not be construed to impair or deny others retained by the People.")

As the court stated in *King* v. *New Rochelle Municipal Housing Authority* (2d Cir. 1971) 442 F.2d 646, 648: "It would be meaningless to describe the right to travel between states as a fundamental precept of

---

[3]The United States Supreme Court has not yet specifically considered whether there is any constitutional distinction between interstate and intrastate travel (see *Memorial Hospital* v. *Maricopa County* (1974) 415 U.S. 250, 256-257 [39 L.Ed.2d 306, 313-314, 94 S.Ct. 1076, 1081).

personal liberty and not to acknowledge a correlative constitutional right to travel within a state."[4]

(Blackstone (*loc. cit.*) called this a personal liberty and stated: "This personal liberty consists in the power of locomotion, of changing situation or moving one's person to whatever place one's inclination may direct; without imprisonment or restraint, unless by due course of law . . . it is a right strictly natural; that the laws of England have never abridged it without sufficient cause; and, that in this kingdom, it cannot ever be abridged at the mere discretion of the magistrate, without the *explicit* permission of the laws.") (Italics added.)

The court in *United States* v. *Wheeler* (1920) 254 U.S. 281, 293 [65 L.Ed. 270, 41 S.Ct. 133, 134] (an interstate travel case) said: "In all the states, from the beginning down to the adoption of the Articles of Confederation, the citizens thereof possessed the fundamental right, inherent in citizens of all free governments, peacefully to dwell within the limits of their respective states, to move at will from place to place therein, and to have free ingress thereto and egress therefrom with a consequent authority in the states to forbid and punish violations of this fundamental right."[5]

Many other fundamental rights such as free speech, free assembly, and free association are often tied in with the right to travel. It is simply elementary in a free society. Freedom of movement is basic in our scheme of values (*Kent* v. *Dulles* (1958) 357 U.S. 116, 126 [2 L.Ed.2d 1204, 1210, 78 S.Ct. 1113, 1118]).

■ Like all constitutional rights the right of free movement is not absolute and may be reasonably restricted in the public interest. ■ Conditions which infringe on constitutional rights are not automatically invalid. Certain intrusions by government which would be invalid under traditional constitutional concepts may be reasonable at least to the extent that such intrusions are required by legitimate governmental

---

[4]In spite of totalitarian member states not following this democratic concept in practice the right is even recognized at the international level. See article 13, section 1, Universal Declaration of Human Rights (1948) "Everyone has the right to freedom of movement and residence within the borders of each state." (Expressing more of a hope than existing reality.)

[5]Of course, historically it did not apply to incarcerated criminals or slaves and until recently was limited by laws relating to indigents, vagrants, beggars and the like. On freedom of movement generally and its history see Chaffee, Three Human Rights in the Constitution of 1787 (1956) page 162 et seq.

demands. Unlike the direct relationship which may arguably exist in the search and seizure condition cases, there is no direct relationship between the commission of soliciting for prostitution and the exercise of the right to travel (*People* v. *Mason* (1971) 5 Cal.3d 759, 764-765 [97 Cal.Rptr. 302, 488 P.2d 630]). While White's reasonable expectations regarding association and travel have necessarily been reduced, the restriction should be regarded with skepticism. If available alternative means exist which are less violative of the constitutional right and are narrowly drawn so as to correlate more closely with the purposes contemplated, those alternatives should be used (*People* v. *Arvanites, supra,* 17 Cal.App.3d 1052, 1062, applying by analogy the test of *Parrish* v. *Civil Service Commission* (1967) 66 Cal.2d 260, 271 [57 Cal.Rptr. 623, 425 P.2d 223]). We are not persuaded by the argument that the *Parrish* analysis is no longer followed in probation condition cases. No case has been called to our attention upholding such a broad condition which completely prohibits mere presence in a geographical area *at all times* as contrasted with the prohibition of entry into selected and particularized places (such as bars, pool rooms and the like) with reasonable restrictions as to time.

Limitations as to times in which a defendant has legitimate business or legitimate reason to be in a particular area or a prohibition as to working therein have been upheld (see e.g. *People* v. *Lewis* (1978) 77 Cal.App.3d 455, 464 [143 Cal.Rptr. 587] (prohibiting a convicted pimp from working " 'in bars, taxicabs or other locations suitable for acting as a pimp' " but apparently not restricting entry into such places); *State* v. *Setzer* (1978) 35 N.C.App.734 [242 S.E.2d 509] (limiting going to a public building unless on business); on the other hand a condition that a defendant not enter a county without authorization in advance was condemned as unduly harsh in *People* v. *James R.O.* (1971) 36 App.Div.2d 828 [321 N.Y.S.2d 518]). Reasonable curfew restrictions are also proper (see e.g. *People* v. *Peterson* (1975) 62 Mich.App. 258 [233 N.W.2d 250, 79 A.L.R.3d 1072]; *State* v. *Donovan* (Ct. App. 1977) 116 Ariz. 209 [568 P.2d 1107]; *Kominsky* v. *State* (Fla.App. 1976) 330 So.2d 800).

The Attorney General argues that to impose a less restrictive condition here than absolute proscription of White going into the "map area" the court would have to lay out a set of rules as to each probationer which would result in a condition that is uncertain and otherwise impossible to understand and effectively enforce. We are not persuaded. Probation by its very nature is intended to be tailored to the needs of society and the individual defendant. Unlike the purpose of imprisonment which is punishment, the purpose of probation is rehabilitation. The manifest

goals of probation and the need for individualistic treatment compels the imposition of special probation conditions framed to meet the particular needs of each individual case. Particularized conditions of probation should be directed toward rehabilitation rather than reliance upon some general condition which utilizes a mechanized mass treatment approach.

Nevertheless, we do not simply strike the condition. The Legislature as part of the Sisyphean struggle to solve the social problem of prostitution has enacted the soliciting portion of Penal Code section 647, subdivision (b), and has determined that soliciting for prostitution is an offense to decency and public sensibility; that soliciting contributes to the obstruction of streets and passageways; that the tactics of streetwalkers result in the irritation of passersby; and that members of our society should not have to suffer the visible nuisance occasioned by having to look upon the exposed face of vice on the streets. The wisdom of that legislation is, of course, under our system, for the Legislature and not for the courts to decide. The municipal court should be given the opportunity, if it wishes to do so, after evidence presented, to narrow the specific conditions in question consistent with the views expressed herein.[6] Without intending to limit the possibilities and simply as guidelines, for example, the municipal court could validly modify the condition in question by any or all of the following: (1) establish reasonable hours during the day or night when the probationer may under certain specified circumstances and for a particularly enumerated purposes go into and be in the map areas or a particular place therein (such as going to a bus station to purchase a ticket to travel and then immediately leaving the area or being a passenger on public transportation who goes directly through the area without stopping and removing herself from the public transportation); (2) setting out a specific list of particular places (such as bars, pool rooms, motels and the like) from which the probationer may be specifically prohibited from entering (we do not suggest that such a specific list, unless it becomes too broad, need in fact be limited by the map area, should the municipal court desire to keep the map area condition); (3) a prohibition of the probationer from hitchhiking or engaging in any act such as set forth in footnote 2, *ante*, as being a common method of soliciting for prostitution (from the record before us a narrowly drawn condition so providing might have been sufficient in the instant case to permit revocation for violation); (4) reserving the right from time to time, after due notice, and following presentation to the court of changed circumstances, to modify the description of the particular map areas in which the restrictions apply.

[6]There are serious questions regarding the map's validity and nothing in this opinion is intended to prevent the municipal court from discarding the map concept altogether.

The validity of the other conditions of probation have not been argued in this case and those conditions remain unaffected by this opinion.

The writ is granted and the Municipal Court of the Fresno Judicial District is directed to either eliminate the fourth condition of probation or modify that condition in accordance with the views expressed in this opinion.

Zenovich, J., concurred.

**BROWN (G. A.), P. J.**—I concur in the reasoning and result of the principal opinion insofar as it predicates the invalidation of condition 4 of the probation conditions upon the principles enunciated in *People* v. *Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545], and the reasonableness requirement articulated in *People* v. *Keller* (1978) 76 Cal.App.3d 827, 839-840 [143 Cal.Rptr. 184]. However, under well established principles of judicial review constitutional issues should not be reached or decided unless absolutely essential to the disposition of a cause. Since the case is fully and definitively disposed of on the basis of *Lent* and *Keller* I see no reason why the court should reach out to decide the constitutional issue and therefore do not concur in that discussion or the disposition insofar as it is based upon that ground.