823 P.2d 1317

**CHAPARRAL DEVELOPMENT, an Arizona general partnership, Plaintiff–Appellee,**

v.

**RMED INTERNATIONAL, INC., a Colorado corporation, f/k/a Rocky Mountain Medical Corporation, a Colorado corporation, Defendant–Appellant.**

**No. 1 CA–CV 90–182.**

Court of Appeals of Arizona, Division 1, Department D.

Aug. 29, 1991.

Review Denied Feb. 19, 1992.

Fred R. Esser, P.C. by Fred R. Esser, Richard W. Waite, Sedona, for plaintiff-appellee.

Charles H. Frankel, Sedona, for defendant-appellant.

OPINION

VOSS, Presiding Judge.

The question presented here is whether reinstatement of a contract under A.R.S. § 33–813 allows a trustor to prevent a judi-

cial foreclosure of a deed of trust. The trial court ruled that reinstatement only protects the trustor from a trustee's sale, not from foreclosure, and accordingly granted summary judgment to the plaintiff, the beneficiary under the deed of trust. We reverse.

## FACTS AND PROCEDURAL HISTORY

■ On appeal from summary judgment, we view the facts in the light most favorable to the party against whom judgment was entered. *Gordinier v. Aetna Casualty & Surety Co.*, 154 Ariz. 266, 267, 742 P.2d 277, 278 (1987). However, the material facts are not in dispute.

The plaintiff, Chaparral Development, an Arizona general partnership, sold a parcel of real estate in Sedona to the defendant, RMED International, Inc., previously known as Rocky Mountain Medical Corporation. RMED gave Chaparral a promissory note for $87,000. The note was secured by a deed of trust on the property and required monthly payments, due on the first of each month.

During March and April, 1989, RMED learned that Steven W. Ridenour, its president, had been derelict in his duties, which included making the payments to Chaparral. RMED fired Ridenour in early April. However, RMED was unaware that Ridenour had failed to make the April payment to Chaparral. On April 17, 1989, RMED received a letter from Chaparral requesting it to make all further payments to an address in Colorado. The letter contained no notice that the April payment had not been received.

On May 1, 1989, a Chaparral representative told RMED that Chaparral had not received the April payment. RMED then mailed a check from its Tulsa office for the April payment, informed Chaparral of that fact and also stated that RMED's Sedona office had just issued a check for the May payment. Chaparral requested that the May check not be sent to the Colorado address but instead held for pick up at RMED's Sedona office. RMED therefore held the check and associated cover letter.

On May 3, 1989, Chaparral's attorney phoned RMED stating that Chaparral would not pick up the May check, and the attorney would be writing a letter of explanation. On May 4, Chaparral's attorney advised RMED that Chaparral was accelerating the note. On May 5, RMED received a letter from the attorney which stated:

Because the payment due on April 1 was not made timely, and is now more than 30 days past due, my client elects to accelerate the entire amount of principal and accrued interest.

Demand is therefore made that the principal sum of $86,111, plus all accrued interest from March 1, 1989, be paid in full, on or before the close of business on May 12, 1989. In addition to the accrued interest, my client is entitled to recover its reasonable attorney fees. At this time, those reasonable fees amount to $250....

If payment is not received in full as outlined above, my client will proceed to judicial foreclosure on the Deed of Trust....

On May 4, RMED mailed the check for the May installment to the Colorado address via certified mail. The envelope was initially accepted, but then refused on May 11, 1989.

On May 18, 1989, RMED's attorney wrote to Chaparral's attorney:

The April payment was sent by mail from R–Med's Tulsa office, and the envelope has not been returned. We have presumed that your client received payment for April, and if that is not the case, please advise. R–Med will stop payment on the original check for the April payment and issue another check.

Chaparral Development apparently refused to pick up the May payment on May 1, 1989, so the check was sent by Certified Mail to the Colorado Post Office Box for Chaparral Development. That letter and check was initially signed for but then refused on May 11, 1989.

It appears that all payments were properly tendered as of May 1, 1989, but that your client has refused to accept payment. Pursuant to A.R.S. Section

33–813, R–Med is entitled to cure any default and preclude a foreclosure action. Since the April payment has not been returned to us and is presumably in the possession of Chaparral Development, and the May payment was expressly refused, your client's intent is unclear.

This letter will serve as an additional and formal tender of all sums due necessary to bring the Promissory Note current and in all respects comply with A.R.S. Section 33–813. All payments will be made immediately upon your clarification of the amount due.

Chaparral refused the tender and, on June 26, 1989, filed this action to foreclose the deed of trust.

RMED moved for summary judgment, arguing that it had complied with the reinstatement statute. In response, Chaparral did not argue that RMED had not so complied; it instead filed a cross-motion arguing that the statute did not apply and it was therefore entitled to judgment. RMED responded to the cross-motion arguing that there were material issues of fact regarding Chaparral's actions which precluded summary judgment, citing *Vonk v. Dunn*, 161 Ariz. 24, 775 P.2d 1088 (1989). The court agreed with Chaparral and granted its cross-motion. RMED appeals.[1] We have jurisdiction pursuant to A.R.S. § 12–2101(B).

## DISCUSSION

■ This appeal raises an issue of statutory interpretation, thus, we are not bound by the trial court's conclusion. *See Arizona State Bd. of Accountancy v. Keebler*, 115 Ariz. 239, 241, 564 P.2d 928, 930 (App. 1977). Our first duty in interpreting a statute is to determine and give effect to the legislature's intent, and the first place to look is the wording of the statute. *Id.* at 240, 564 P.2d at 929. If the language is plain and unambiguous, then no construc-

tion is necessary and our duty is simply to apply that plain and unambiguous language. *Id.; Jackson v. Phoenixflight Productions, Inc.*, 145 Ariz. 242, 245, 700 P.2d 1342, 1345 (1985).

The statute at the heart of the controversy reads in part:

**§ 33–813. Default in performance of contract secured; reinstatement; cancellation of recorded notice of sale**

A. If, prior to the maturity date fixed by the contract or contracts, all or a portion of a principal sum or interest of the contract or contracts secured by a trust deed becomes due or is declared due by reason of a breach or default in the performance of the contract or contracts or of the trust deed the trustor or his successor in interest, any person having a subordinate lien or encumbrance of record thereon or any beneficiary under a subordinate trust deed may, before five o'clock p.m. on the last day other than a Saturday or legal holiday before the date of sale or the filing of an action to foreclose the trust deed, reinstate by paying to the beneficiary the entire amount then due under the terms of the contract or contracts or trust deed, other than such portion of the principal as would not then be due had no default occurred, by curing all other defaults and by paying the amounts due under subsection B.

The trial court ruled that the beneficiary is not precluded from filing a judicial foreclosure action to foreclose the deed of trust even if the trustor reinstates under A.R.S. § 33–813. The court's position was that the statute only allows the trustor (or subordinate lienholder) to prevent a trustee's sale.[2]

Chaparral argues that the right of reinstatement embodied in A.R.S. § 33–813 applies "in a context where all proceedings relate to a trustee sale and foreclosure via

---

1. RMED raises both issues on this appeal. Because we find in its favor on the reinstatement issue, we need not reach its argument that material fact issues precluded summary judgment on the equitable remedy of foreclosure.

2. We commend the trial judge for fully explaining the reasoning behind his decision. Appellate review is greatly eased and is more effective and efficient when the trial court does so. *See Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 495 n. 3, 733 P.2d 1073, 1078 n. 3, *cert. denied*, 484 U.S. 874, 108 S.Ct. 212, 98 L.Ed.2d 177 (1987).

power of sale." It argues that the many references to actions taken by the trustee and information to be provided to the trustee, lead to the conclusion that it does not cover judicial foreclosures. Apparently, Chaparral contends the trustee's only function is to conduct trustee's sales. The trial court agreed with these arguments. In denying RMED's motion for reconsideration, it stated:

> ARS sec. 33–813(a) provides that a trustor in default may "reinstate" before the trustee's sale or the filing of a foreclosure action. sec. 33–813(b) describes the effect of "reinstatement:" The "trustee" is notified, the "proceedings" are dismissed and the "trust deed" "deemed reinstated and in force as if no breach or default had occurred." The "proceedings" are "dismissed" by "cancellation of the notice of sale;" ARS sec. 33–813(E). The use of these particular terms implies that the tender of reinstatement precludes, only, the option of a trustee's sale. Under sec. 33–807 the *trustee* exercises the power of sale; the *beneficiary* elects foreclosure ("at the option of the beneficiary, a trust deed may be foreclosed"), and the trustee need not be involved in the foreclosure action. If the beneficiary had decided to foreclose and had never contemplated proceedings under the power of sale, there would be no reason to notify the trustee, because there would be, in that situation, no "proceedings" for the trustee to cancel. And the "proceedings" that are to be dismissed must be read to refer to the trustee's sale, since there can be no reinstatement after foreclosure proceedings have been filed. It must be concluded that the effect of reinstatement is only to preclude a trustee's sale, and that the tender of the reinstatement amounts, unaccepted, cannot preclude the filing of a foreclosure action....

■ We find these arguments unpersuasive. The trustee's duties are not limited to conducting trustee's sales. The trustee is involved in various ways. For example, under A.R.S. § 33–807, the trustee can be the plaintiff in a foreclosure action. A more telling example is found in A.R.S.

§ 33–813 itself. Under § 33–813(D), the trustee must, upon request, provide "a good faith estimate of the sums which appear necessary to reinstate the trust deed...." This estimate is not limited to the trustee's sale context. A trustor who plans to reinstate needs to know how much money to pay irrespective of the method the beneficiary might intend to use to enforce the trust deed. The trustee is given the responsibility of providing that information regardless of the beneficiary's intended method.

■ Chaparral expands upon its position by noting that under A.R.S. § 33–814(E), the beneficiary may forego the power of sale provided by Chapter 6.1 and proceed with a foreclosure under Chapter 6. It argues:

> This makes eminent good sense for if a note maker defaults then cures and continues this cycle of default and reinstatement under the provisions of Chapter 6.1, the note holder's only alternate remedy is via a judicial foreclosure where only a *right of redemption* exists in the law.

It contends that the right of reinstatement was given as a corollary to the right of redemption which exists under the mortgage foreclosure chapter A.R.S. §§ 33–701 through 33–729, but not under the deed of trust chapter A.R.S. §§ 33–801 through 33–821. Again, the trial court agreed:

> Sec. 33–814(E) seems to make this explicit: "The provisions of this chapter do not preclude a beneficiary from foreclosing a deed of trust...."

This conclusion is consistent with the explanation of the right to reinstate under a trust deed offered by Gary E. Lawyer:

> In Arizona a mortgagor in default may redeem his property within six months following the foreclosure sale. Accordingly, when the beneficiary of a trust deed elects judicial foreclosure, the trustor has the same redemption right as does the mortgagor. If the beneficiary elects to foreclose through the trustee's sale, on the other hand, the trustor has no right of redemption

after the sale. To offset the loss of the redemptive period, the Act gives the trustor a 90 day reinstatement period prior to the trustee's sale to cure the default. Lawyer, *The Deed of Trust: Arizona's Alternative to the Real Property Mortgagor*, 15 ARIZ LAW REV 194 (1973).

We find it irrelevant that there is a right of redemption after a foreclosure but not after a trustee's sale. It might be true that the right of reinstatement was given to the trustor to balance out the different remedies available to the beneficiary with a deed of trust as opposed to a mortgage. It might be true that reinstatement was provided in the deed of trust because no right of redemption after a trustee's sale was given.[3] However, the statute simply does not limit reinstatement to trustee's sales; its words apply equally as well to judicial foreclosures.

Chaparral's allusion to the problem of the trustor who repeatedly fails to make payments and then reinstates is unpersuasive. The beneficiary is not without a remedy in such a case. The statute allows the beneficiary to file a foreclosure action before the trustor attempts reinstatement. If such an action is filed, under A.R.S. § 33-813(A), the trustor is precluded from reinstating, the beneficiary may prosecute the action to completion, foreclose on the property, and be free of the delinquent buyer. On the other hand, if the trustor reinstates before the foreclosure action is filed, then the beneficiary is made whole.

▉ We do not ascribe the same significance to the requirement under subsection B that "proceedings shall be dismissed" as did the trial court. The trial court logically noted that "proceedings" must refer to trustee's sale because a reinstatement is only possible before a foreclosure action has been filed. However, it erroneously concluded that the statute could only refer to a trustee's sale because otherwise there is no "proceeding" to dismiss. We note there is a similar lack of a "proceeding" to

dismiss where the beneficiary plans to foreclose via the power of sale but the trustee has not yet noticed a sale. The logical inference is that this requirement applies if, and only if, there are proceedings that can be dismissed under the statute, i.e., an uncompleted trustee's sale. Interpreting the statute as did the trial court, and as Chaparral advocates, would effectively erase the provision that a contract can be reinstated before a foreclosure action is filed. We must harmonize apparently conflicting language of different parts of the statute so as to give effect to both. *Lemons v. Superior Court*, 141 Ariz. 502, 505, 687 P.2d 1257, 1260 (1984).

Finally, Chaparral argues that language from this court's decision in *Schoonover v. Arizona Title Ins. & Trust Co.*, 126 Ariz. 438, 442, 616 P.2d 898, 902 (App.1980), supports the contention that reinstatement protects the trustor only from a trustee's sale, not from foreclosure. The trial court agreed, stating in its order granting summary judgment:

> The right embodied in ARS sec. 33-813 is "the right to reinstate without acceleration of the entire unpaid balance of the indebtedness *when foreclosure is by trustee sale;" Schoonover*, 126 Ariz. at 439 [616 P.2d at 899] (emphasis added). While payment of the amounts set forth in sec. 33-813(B) would deprive the trustee of the option of exercising a power of sale, such payment would not, under sec. 33-813, eliminate the right to judicial foreclosure.

This reliance on *Schoonover* is misplaced. The quoted statement is only a fragment of a sentence and is applied out of context. The full text is:

> The right to reinstate without acceleration of the entire unpaid balance of the indebtedness when foreclosure is by trustee sale is one of the most important features of Arizona's deed of trust statutory scheme, since all post-sale redemption rights are extinguished. *See* A.R.S. § 33-811 B.

---

**3.** The legislative history behind the statute, which was added by Laws 1971, Ch. 136, § 7, provides no help in construing it.

126 Ariz. at 439–40, 616 P.2d at 899–900 (footnote omitted). *Schoonover* discussed "foreclosure ... by trustee sale" because a trustee sale is what occurred in the case. The opinion did not intimate that reinstatement was effective only as against a trustee's sale, as the court noted that judicial foreclosure was also a possibility:

> The beneficiary may elect to foreclose the deed of trust by filing a foreclosure action in the manner provided by law for the foreclosure of real property mortgages "at any time before the trust property has been sold under the [trustee's] power of sale." A.R.S. § 33–807. *Upon the filing of such an action, the right to reinstate terminates.* See A.R.S. § 33–813 A. However, the debtor/trustor would still have the right to redeem the property by paying the full amount of the indebtedness secured, but without the protection afforded by the non-acceleration provisions of A.R.S. § 33–813 A. See A.R.S. §§ 33–726 and 12–1282.

*Id.* at 439, n. 2, 616 P.2d at 899, n. 2 (emphasis added). If the filing of a judicial foreclosure action terminates the right of reinstatement, it is only logical to assume that the right exists until that time. *Schoonover's* discussion of reinstatement vis-a-vis judicial foreclosure is dictum, but the case supports the conclusion opposite of that for which Chaparral cites it.

The language of A.R.S. § 33–813(A) and (B) is clear and unambiguous. It provides that a contract may be reinstated before either a trustee's sale or the filing of a foreclosure action. Equally clear is the provision that upon payment of all amounts due, the contract shall be deemed reinstated as if no breach or default had occurred. Put another way, reinstatement cancels the prior default. If there is no existing default in the performance of the contract, then the beneficiary has no cause to foreclose the deed of trust, whether by trustee's sale or by judicial action:

> The general prerequisites to the right of foreclosure are that there be a valid mortgage ... securing a debt or duty which remains wholly or in part unpaid or unperformed ... and by which some kind of estate or title has been conveyed to the mortgagee as security ... *and that there be a breach of the condition of the mortgage....*

59 C.J.S. *Mortgages* (1949) § 492 at 775 (emphasis added). By definition, if a contract has been reinstated, there is no default and, hence, no cause to foreclose.[4]

In sum, A.R.S. § 33–813 provides that the trustor may reinstate the contract if it does so before the trustee sells the property under the power of sale, or before the trustee or beneficiary files a foreclosure action. The effect of reinstatement is to clean the slate. This can only mean that a valid reinstatement precludes a foreclosure action. Had the legislature intended to provide the trustor protection only from a trustee's sale, it could have said so in the statute.

## CONCLUSION

Chaparral did not argue before the trial court or this court that RMED failed to fully comply with A.R.S. § 33–813. We therefore do not inquire into the sufficiency of RMED's compliance and must assume for purposes of this appeal that RMED did comply. That being the case, our holding that A.R.S. § 33–813 applies to foreclosure actions requires that judgment be entered in favor of RMED.

RMED has requested attorney's fees on appeal pursuant to A.R.S. § 12–341.01(A) and the deed of trust. We grant the request and direct RMED to file a statement in compliance with Rule 21(a), Arizona Rules of Civil Appellate Procedure.

RMED has also requested that we direct the trial court to take evidence, determine damages and enter judgment for breach of

---

**4.** A.R.S. § 33–814(E), which states that "the provisions of [the deed of trust statutes] do not preclude a beneficiary from foreclosing a deed of trust in the same manner as a real property mortgage," must be read in light of the requirement that there be a default. Otherwise, the language in § 33–813(A), allowing a reinstatement before a judicial foreclose action, is rendered totally null. We must harmonize the statutes, if possible, and give effect to both. *See Lemons v. Superior Court, supra.*

contract, wrongful foreclosure and violation of A.R.S. § 33–420. RMED did not file a counterclaim seeking any affirmative relief and is therefore not entitled to it.

The judgment is reversed. The case is remanded to the superior court with instructions to enter judgment in favor of the appellant, RMED International, Inc., in accordance with this opinion.

EUBANK and McGREGOR, JJ., concur.