895 P.2d 1009

**STATE of Arizona, Appellee,**

v.

**Sharon Lee TARANGO, Appellant.**

**No. 1 CA–CR 93–0457.**

Court of Appeals of Arizona, Division 1, Department C.

Nov. 22, 1994.

Review Granted May 23, 1995.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, and Monica D. Beerling, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Paul J. Prato, Deputy Public Defender, Phoenix, for appellant.

## OPINION

WEISBERG, Judge.

Sharon Lee Tarango ("defendant") appeals her convictions and sentences on one count of sale of a narcotic drug and two counts of possession of narcotic drugs for sale, as enhanced by two prior felony convictions. We affirm the convictions but issue this opinion to clarify that, under the applicable statute, former Ariz.Rev.Stat.Ann. ("A.R.S.") section 13–604(D) (1989), defendant is eligible for release after serving two-thirds of her prison sentences.

## FACTUAL BACKGROUND

We view the evidence at trial in the light most favorable to sustaining the verdicts, resolving all reasonable inferences against defendant. *State v. Atwood,* 171 Ariz. 576,

596, 832 P.2d 593, 613 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

On December 9, 1992, an undercover police officer visited a West Phoenix house that had been identified as the site of drug transactions. Defendant answered the back door and the officer asked to purchase cocaine. The officer gave defendant $20 and she invited him inside. He waited in a utility room while defendant went into the kitchen area. Inside the utility room were four other people who were preparing or injecting drugs that appeared to be heroin or cocaine.

Defendant soon returned from the kitchen and handed the officer two plastic bags containing cocaine rocks. The officer also observed defendant make a similar transfer to another man who had entered the house. A criminalist testified that the plastic bags sold to the officer contained 360 milligrams of cocaine in a usable condition.

Two days after the undercover purchase, police searched the house pursuant to a warrant. Defendant initially was arrested in the northwest bedroom, where she had been sleeping, although she subsequently was found outside the house, wearing handcuffs placed on her by police. A search of the house revealed powder cocaine, rock cocaine, and heroin in the northwest and west bedrooms, bathroom, and kitchen. The house had no electricity and was unfurnished.

An investigating detective testified that the powder cocaine had a street value of $1,600, the rock cocaine had a street value of $1,060, and the heroin had a street value of $1,500 to $1,800. Inside the house, police also observed items, such as spoons or bottle caps, commonly used to "cook" heroin before injection; pipes used to smoke rock cocaine; baking soda that could be used as a bonding agent for rock cocaine; and plastic bags that could be used to package rock cocaine for sale. Based upon these facts, the detective testified that, in his opinion, the narcotics were possessed for sale.

Police questioned defendant after her arrest. She stated that she was unemployed and admitted that she used narcotics, although she denied having done so during the preceding week. The investigating officer observed needle marks on both her arms.

At trial, defendant denied that she either sold drugs to the undercover officer or that she possessed drugs at the time of the search of the house. She claimed that she lived elsewhere, but admitted that she had spent the two previous nights at the house. She also admitted that she knew drugs were in the house and that she had access to those drugs.

The jury found defendant guilty of all three charges. Based upon defendant's admission to two prior felony convictions, the judge imposed an enhanced, presumptive term of 15.75 years imprisonment on each count. He ordered the sentences to be served concurrently. Defendant filed a timely notice of appeal. She raises the following issues:

1. The trial court erred in denying her motion for judgment of acquittal on the charges of possession of narcotic drugs for sale;

2. The trial court erred in admitting testimony regarding a complaint of drug trafficking in the house where she was arrested; and

3. The trial court erred in failing to specify that she would be entitled to parole eligibility after serving two-thirds of her sentences.

## DISCUSSION

### *DENIAL OF JUDGMENT OF ACQUITTAL*

Defendant first argues that the trial court erred in denying her motion for judgment of acquittal on the charges of possession of narcotic drugs for sale. She maintains that the evidence merely showed that she was present at a house where drugs were discovered, but that such fact alone will not support her convictions. A judgment of acquittal is appropriate when there is "no substantial evidence to warrant a conviction." Rule 20, Arizona Rules of Criminal Procedure ("Rule(s)"); *State v. Mathers,* 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990). "Substantial evidence is more than a mere scintilla and is

such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *Id.,* quoting *State v. Jones,* 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980). Defendant emphasizes testimony by police that she had neither narcotics nor money on her person at the time of her arrest. She also points out that the trial record does not reveal the precise location of the narcotics found in the room where she was arrested.

■ The state responds that defendant was charged with possessing heroin and cocaine for sale. To prove that defendant constructively possessed these narcotics, the state was required to show that she exercised dominion and control over them. *State v. Villalobos Alvarez,* 155 Ariz. 244, 245, 745 P.2d 991, 992 (App.1987). Constructive possession may be shown by circumstantial evidence. *Id.; State v. Donovan,* 116 Ariz. 209, 212, 568 P.2d 1107, 1110 (App.1977); *State v. Ballinger,* 19 Ariz.App. 32, 35, 504 P.2d 955, 958 (1973). We conclude that sufficient evidence supported her convictions.

■ Defendant was present at the time the search occurred. *See Donovan,* 116 Ariz. at 213, 568 P.2d at 1111 (defendant's presence in house when police arrived supported inference of constructive possession of marijuana). Although she contended that she did not live in the house, she admitted spending the two previous nights there. *See State v. Jenson,* 114 Ariz. 492, 493, 562 P.2d 372, 373 (1977) (constructive possession of marijuana supported in part by defendant's periodic residence in home where it was discovered). The state was not required to show that defendant exclusively controlled the place where the narcotics were found. *State v. Villavicencio,* 108 Ariz. 518, 520, 502 P.2d 1337, 1339 (1972).

Further, defendant admitted using narcotics that she purchased at the house. *See State v. Nadler,* 129 Ariz. 19, 22, 628 P.2d 56, 59 (App.1981) (defendant's prior use of marijuana and cocaine in car supported inference of possession of drugs found there). In addition, the fact that defendant was found outside the house after being handcuffed inside supported an inference of flight that, in turn,

suggested that she possessed the narcotics discovered by police. *State v. Laurino,* 108 Ariz. 82, 83, 492 P.2d 1189, 1190 (1972).

■ Defendant's argument rests upon the premise that she could have been convicted only for possessing the cocaine and heroin discovered in the bedroom where she had been sleeping. The indictment and instructions to the jury, however, were not so limited. The detective's observations when he purchased cocaine from defendant provided substantial evidence that she had access to the heroin and cocaine later found throughout the house. Defendant even admitted to police that she knew drugs were present in the house and that she had access to them. This evidence permitted an inference that defendant possessed these narcotics. *Nadler,* 129 Ariz. at 22, 628 P.2d at 59.

■ Defendant also claims that, even if the evidence was sufficient to establish her possession of narcotic drugs, it was insufficient to establish possession for sale. We again disagree. Testimony that defendant sold cocaine to an undercover officer two days prior to her arrest supported the inference that the cocaine found in the house was intended for sale. *Cf. Ballinger,* 19 Ariz. App. at 35, 504 P.2d at 959 (defendant's presence in house on previous day supported inference that he possessed narcotics seized when police returned with search warrant). In addition, the inference of possession for sale was supported by the quantity of the narcotics seized and the presence of packaging materials. *State v. Olson,* 134 Ariz. 114, 118, 654 P.2d 48, 52 (App.1982). Moreover, the fact that the house was without electricity or furniture strongly suggested that it was being used primarily to sell narcotics, and only incidentally as a residence. We therefore find that the trial court did not err in denying defendant's motion for judgment of acquittal.

## REFERENCE TO COMPLAINT OF DRUG ACTIVITY

During direct examination, an investigating officer testified that police obtained a search warrant for the house because of "a

complaint that ... established [that] this location was involved in some sort of illegal activity due to a high amount of traffic." Defendant's hearsay objection was overruled.

■ On appeal, defendant concedes that the statement was not hearsay because it was not offered for the truth of the matter asserted, but contends that the answer was nevertheless inadmissible because it was irrelevant to the issues at trial. *See State v. Simms,* 176 Ariz. 538, 540–41, 863 P.2d 257, 259–60 (App.1993) (noting that the reason why undercover officers contacted defendant was not at issue and "strongly" disapproving introduction of such evidence "under the guise of completing the story of the crime"). Because the objection below was based only on hearsay grounds, defendant has waived any objection based on relevance. Nevertheless, we must determine if admitting the witness' answer constituted fundamental error. *See State v. Romanosky,* 162 Ariz. 217, 222–23, 782 P.2d 693, 698–99 (1989). We find no fundamental error because the answer caused defendant no discernible harm. The undercover officer who made the drug purchase testified, without objection, that he had received information that narcotics were being sold at the house. This fact was never disputed by defendant, who even admitted purchasing drugs there. Therefore, the trial court did not commit reversible error.

## *SENTENCING*

Defendant contends that she must be resentenced because the trial court did not specify that she was eligible for parole after serving two-thirds of her concurrent 15.75 year sentences. The state responds that resentencing is unnecessary because defendant must serve her prison terms without the possibility of parole.

This dispute is rooted in sentencing provisions found in the former versions of two applicable statutes.[1] Former A.R.S. section 13–3408(B) defines and prescribes penalties for, *inter alia,* possession of a narcotic drug for sale and sale of a narcotic drug. Both offenses are class 2 felonies. Pursuant to former A.R.S. section 13–3408(D), a person convicted of either offense

> is not eligible for suspension or commutation of sentence, probation, pardon, parole, work furlough or release from confinement on any other basis until the person has served the sentence imposed by the court.

Former A.R.S. section 13–604, on the other hand, sets out penalties for dangerous and repetitive offenses, with subsection (D) specifying an enhanced sentencing range for a class 2 felony committed by a person with two prior felony convictions. The subsection further provides that the person convicted "shall not be eligible for suspension or commutation of sentence, probation, pardon or parole, work furlough or release from confinement on any other basis ... until not less than two-thirds of the sentence imposed by the court has been served." Moreover, former A.R.S. section 13–604(K) provides:

> *The penalties prescribed by this section shall be substituted for the penalties otherwise authorized by law if the previous conviction ... is charged in the indictment or information and admitted or found by the trier of fact.*

(Emphasis added.)[2]

■ In interpreting statutes, our primary duty is to determine and give effect to the legislature's intent. *Chaparral Development v. RMED Intern., Inc.,* 170 Ariz. 309, 311, 823 P.2d 1317, 1319 (App.1991). We first look to the wording of the statute. *Id.; State v. Jannamon,* 169 Ariz. 435, 438, 819 P.2d 1021, 1024 (App.1991). If the language is plain and unambiguous, then no construction is necessary and our duty is to apply that language. *Chaparral,* 170 Ariz. at 311, 823 P.2d at 1319.

■ Applying these rules of construction, we agree with defendant that, since the penalties in former A.R.S. section 13–604 are to be "substituted for the penalties otherwise authorized by law," the provisions of subsection (D), including the provision regarding

---

1. Legislation effective in 1994 extensively revised A.R.S. sections 13–604 and 13–3408. 1993 Ariz. Sess.Laws, Ch. 255, §§ 7, 44.

2. This provision is currently codified as A.R.S. section 13–604(P).

parole eligibility, must control her sentences. This unambiguous, mandatory directive requires that the sentencing provisions governing repetitive offenses must apply when, as in this case, an allegation of prior convictions is made by the state and admitted by defendant at trial. In reaching this conclusion, we do no more than follow the clear directive of former A.R.S. section 13–604 that its provisions shall prevail when in conflict with other statutory provisions. Thus, by choosing to apply the enhancement penalty of former A.R.S. section 13–604, the state was bound to follow the balance of its terms as well.

In reaching our conclusion, we knowingly depart from the analysis of *State v. Behl,* 160 Ariz. 527, 774 P.2d 831 (App.1989). In *Behl,* a different panel of this Court considered an argument analogous to the one presented here. The defendant had been convicted of a dangerous sexual assault. The sexual assault statute generally precluded release from confinement "until the sentence imposed by the court has been served." *See* former A.R.S. section 13–1406(B). The defendant contended that the "flat time" sentencing provision in the sexual assault statute did not apply because the provision governing dangerous offenses in former A.R.S. section 13–604(G) provided for parole eligibility after two-thirds of the sentence was served.

The *Behl* court determined that the sexual assault statute and former A.R.S. section 13–604(G) were in "irreconcilable conflict," and that the language of the sexual assault statute controlled because it was more recently enacted and more specific. 160 Ariz. at 530, 774 P.2d at 834. In reaching this conclusion, the *Behl* court quoted former A.R.S. section 13–604(K) but did not analyze its effect on the perceived conflict. We, however, conclude that this subsection, by directing that penalties in former A.R.S. section 13–604 be "substituted" for those specified elsewhere, provides the means of reconciling the apparent conflict between it and the other statutes. As a result, we are able to fulfill our duty to "construe seemingly conflicting statutes in harmony when possible." *Baker v. Gardner,* 160 Ariz. 98, 101, 770 P.2d 766, 769 (1988). Conversely, were we to ignore the express language of former A.R.S. section 13–604(K),

we would violate our duty to avoid rendering statutory language superfluous, void, contradictory, or insignificant. *State v. Garza Rodriguez,* 164 Ariz. 107, 112, 791 P.2d 633, 638 (1990); *Blum v. State,* 171 Ariz. 201, 205, 829 P.2d 1247, 1251 (App.1992).

■ We also note that the decision in *Behl* was influenced by a perceived anomaly that is not present in this case. In *Behl,* the court believed that a defendant who committed sexual assault not alleged to be dangerous, and hence not subject to former A.R.S. section 13–604, would be ineligible for parole, while a dangerous offender sentenced under former A.R.S. section 13–604(G) would be eligible for release after serving two-thirds of his sentence. The court concluded that "the legislature did not intend this absurd result." 160 Ariz. at 529, 774 P.2d at 833. The *Behl* court, however, failed to consider that the enhancement provision for dangerous offenses, though providing an opportunity for release, also lengthened the applicable sentencing range. The legislature thereby ensured that a dangerous offender sentenced to the presumptive term would serve at least as much time in prison as a defendant sentenced to the presumptive term for a nondangerous offense. Also, for defendants with two or more prior felony convictions, A.R.S. section 604(D) increases by two to four times the original sentence authorized. Therefore, although the instant defendant will be eligible for release after serving 10.5 years of her 15.75–year sentence, that term of imprisonment will still exceed the "flat" seven-year presumptive sentence that former A.R.S. section 13–3408(B) mandates for a first-time offender. There is nothing absurd in this result. We therefore find that former A.R.S. section 13–604(D) controls and that defendant is eligible for release after serving two-thirds of her sentences.

We further note that the state somehow advocates the partial application of former A.R.S. section 13–604(D) by supporting the imposition of prison terms within its enhanced sentencing range while arguing against the application of the release eligibility provision found in the same subsection. Although the state offers no explanation for this inconsistency, we believe that such par-

tial application could be explained only by construing the release eligibility language as something other than a "penalty ... authorized by law," and therefore not governed by former A.R.S. section 13–604(K). We reject such a construction.

Former A.R.S. section 13–604 punished repetitive or dangerous offenses both by enhancing the range of prison sentences and by prohibiting release until a defendant completes not less than two-thirds of his or her sentence. *See* former A.R.S. sections 13–604(B), (D), (G). Therefore, within the framework of the statute, the release eligibility provision is as much a "penalty" as is the provision requiring increased prison terms.

■ Although we agree with defendant's construction of the sentencing statutes, we disagree with her claim that remand is required. The trial judge is not required to inform the defendant about parole eligibility at the time of sentencing. Rule 26.10(b) and comment ("The explanation of the sentence should include the ... length and order of sentences if there are more than one, and whether the new sentence is to be tacked onto or served concurrently with a sentence which the defendant is then serving."). In addition, the sentencing minute entry correctly set out the applicable statute, former A.R.S. section 13–604, which governs parole eligibility. No modification is necessary.

## CONCLUSION

Pursuant to A.R.S. section 13–4035, we have reviewed the entire record on appeal. We find no fundamental error. Accordingly, defendant's convictions and sentences are affirmed.

EHRLICH, P.J., concurs.

VOSS, Judge, dissenting.

I disagree with the majority opinion only insofar as it diverges from *Behl* and holds that the general sentencing guidelines of former A.R.S. section 13–604(D) prevail over the specific sentencing guidelines of former A.R.S. section 13–3408(D). Accordingly, I do not believe defendant is eligible for parole after two-thirds of her sentence is served.

In *Behl*, this court first attempted to harmonize former A.R.S. section 13–1406(B), which prohibited early release from prison in instances of sexual assault, with former A.R.S. section 13–604(G), which generally provided for early release through parole. 160 Ariz. at 529–30, 774 P.2d at 833–34. Notwithstanding former A.R.S. 13–604(K), which provided that penalties in that section be "substituted for the penalties otherwise authorized by law[,]" the court in *Behl* determined that the statutes were in irreconcilable conflict. *Id.* at 530, 774 P.2d at 834. Because they could not be harmonized, the court held that former A.R.S. section 13–1406(B), the more recent statute that specifically prohibited early release in instances of sexual assault, prevailed over the general sentencing guidelines of former A.R.S. section 13–604(G). *Id.*

The present case mirrors *Behl.* Because former A.R.S. section 13–3408(D) entirely prohibits early release from prison for certain drug offenses, whereas former A.R.S. section 13–604(D) generally provides for early release through parole, a conflict arises. As in *Behl,* former A.R.S. section 13–604(K) fails to harmonize these conflicting statutes to effectuate the intent of the legislature. Therefore, an irreconcilable conflict exists.

It is well-established that when an irreconcilable conflict arises between two statutes, "the more recent, specific statute governs over the older, more general statute." *Lemons v. Superior Court of Gila County,* 141 Ariz. 502, 505, 687 P.2d 1257, 1260 (1984); *see also Pima County v. Heinfeld,* 134 Ariz. 133, 134–36, 654 P.2d 281, 282–84 (1982); *Webb v. Dixon,* 104 Ariz. 473, 475–76, 455 P.2d 447, 449–50 (1969); *Behl,* 160 Ariz. at 530, 774 P.2d at 834. Here, former A.R.S. section 13–604(D) applies to felonies in general. It was enacted in 1977 and amended in 1978. On the other hand, former A.R.S. section 13–3408(D) applies only to certain offenses involving narcotic drugs. It was enacted in 1987. Therefore, because former A.R.S. section 13–3408(D) is the more recent and more specific statute, it should govern.

Former A.R.S. section 13–3408(D) enumerates the applicable sentencing guideline: people convicted of certain narcotic drug of-

fenses must, without exception, serve the entire sentence imposed by the court. Accordingly, defendant is not eligible for parole.

Therefore, I respectfully dissent.