Filed 3/4/21  P. v. Vaughn CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TRACY MICHELE VAUGHN,<br><br>Defendant and Appellant. | F078472<br><br>(Super. Ct. No. BF172429A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Colette M. Humphrey, Judge.

Randall Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Marcia A. Fay, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**SEE CONCURRING AND DISSENTING OPINION**

## INTRODUCTION

Appellant and defendant Tracy Michele Vaughn pleaded no contest to a violation of Penal Code section 422,[1] criminal threats committed against R.C., her sister. As part of the plea agreement, the court dismissed the identical charge that defendant allegedly committed against V.L. The record before this court does not identify the nature of the relationship between defendant and V.L. At the sentencing hearing, the court issued a criminal protective order under section 136.2, subdivision (i)(1), applicable to victims in domestic violence cases, that prohibited defendant from having any contact with both R.C. and V.L.

On appeal, defendant argues the court lacked statutory authority to include V.L. in the protective order because there is no evidence V.L. was a domestic violence victim as defined in the statute. Defendant further argues the order imposed to protect R.C. must be modified because she was prohibited from being within 500 yards of R.C., such a distance was constitutionally overbroad since it violated her right to travel, and the distance should be reduced to 50 feet.

Finally, defendant argues the court improperly ordered her to pay a restitution fine and other fees without determining her ability to pay such amounts, based on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).

We will reverse the court's order imposing the protective order as to V.L and remand the matter for further appropriate proceedings. With respect to defendant's *Dueñas* claim, we conclude, in accordance with our recent decision in *People v. Montes* (2021) 59 Cal.App.5th 1107 (*Montes*), that defendant did not forfeit review of her claim and, given the undeveloped record, the parties may, on remand, address the issues and develop the record.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

2.

**Threat to R.C. and fire at residence**

"On April 15, 2018, deputies were dispatched to a residence regarding a suspicious circumstance investigation.  Upon arrival, contact was made with Kern County Fire Department personnel who were on scene [ex]tinguishing a fire on the back patio of the residence.  Deputies observed a large[,] brown[,] glass alcohol bottle shattered under a table on the back patio and could see what looked like the neck of the bottle with a burnt cloth inside of it."

"Contact was made with [R.C.], a victim, who stated earlier in the evening, she received text messages from her sister, [defendant], stating, 'I'm gonna get you and if you send me your address, I'll be right over.'  'I'm real crazy and I've been taught by the best so count your bullets bitch cuz, I'm coming.'"

"[R.C.] stated she was sitting in her bedroom when she heard a loud explosion behind her house.  She observed the back patio area was on fire and saw the defendant driving away in the alley behind the residence."

**Threat to V.L.**

"A few hours later, deputies were dispatched to another residence regarding a criminal threat investigation that appeared to be possibly related.  Upon arrival, contact was made with [V.L.], a victim, who stated earlier that morning, she received a text message from the defendant containing a photograph of a Molotov cocktail."

**PROCEDURAL HISTORY**

On May 29, 2018, a complaint was filed in Kern County Superior Court, charging defendant with committing the following offenses on April 15, 2018:  count 1, attempted

---

**2**      At the plea hearing, the parties stipulated to the "police report" as the factual basis for defendant's no contest plea.  The instant record does not contain any original law enforcement reports.  The following facts are taken from the probation report, which is a summary of the report from the Kern County Sheriff's Department, in precisely the order presented in the probation report.

arson of an inhabited structure (§§ 664, 451, subd. (b)); count 2, criminal threats committed against R.C. (§ 422); and count 3, criminal threats committed against V.L. (*ibid*.). It was further alleged defendant had one prior strike conviction (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), one prior serious felony enhancement (§ 667, subd. (a)), and one prior prison term enhancement (§ 667.5, subd. (b)). An arrest warrant was issued for defendant.

On July 17, 2018, the defendant was arrested on the outstanding warrant and booked into custody.)

**Arraignment and initial protective order**

On July 19, 2018, the court held the arraignment. Defendant pleaded not guilty and denied the special allegations. Defendant was in custody and bail was set at $100,000. The record does not include a reporter's transcript for the arraignment.

According to the minute order, the court issued a protective order and served it on defendant, but it is not clear who the protected parties were. In issuing the order, the court found sufficient evidence to believe "that harm to, or intimidation or dissuasion of an alleged victim or witness has occurred or is reasonably likely to occur." (Full capitalization omitted.) The court ordered defendant not to harass, stalk, threaten, assault, or molest a particular person or persons. The court found good cause to prohibit defendant from owning, possessing, buying, or obtaining a firearm or ammunition, and surrender any firearms.

The court found good cause to order defendant not to attempt, prevent, or dissuade "any victim or witness" (full capitalization omitted) from attending a hearing or testifying, or making a report to law enforcement; not to take any action to obtain the address or location of the protected party or the party's family members; have no personal, electronic, telephonic, or written contact with the protected person or through a third party; or come within 500 yards of the protected person.

## The plea hearing

On July 31, 2018, the court convened a hearing and defendant was still in custody. The court stated the parties had reached a negotiated disposition. The prosecutor confirmed defendant would plead no contest to count 2, criminal threats against R.C., and admit the prior strike conviction, for a second strike term of four years and dismissal of the remaining charges on condition the plea remain in effect.

The prosecutor stated the plea included "a *Harvey* waiver for restitution as to Count 1 [attempted arson], if there is any." (Italics added.)[3] The court asked defendant whether she understood the terms of the plea, and that it would order "restitution for all losses." Defendant said yes. The parties stipulated to a factual basis for the plea based on "the police report."

The court reviewed the change of plea and advisement form that defendant had signed. The form stated defendant was entering her no contest plea subject to a "*Harvey* waiver" (italics added), that "although some charges will be dismissed as a result of my plea of guilty or no contest, I agree that the sentencing judge may nevertheless consider the facts underlying the dismissed counts/cases, including determining any additional restitution that I may have to pay, in deciding the sentence in my case."

Defendant pleaded no contest to count 2, criminal threats against R.C., and admitted the prior strike conviction. The court granted the People's motion to dismiss the remaining charges, count 1, attempted arson, and count 3, criminal threats against V.L., "on condition the plea remains in full force and effect and with a *Harvey* waiver." (Italics added.)

---

[3] A *Harvey* waiver (*People v. Harvey* (1979) 25 Cal.3d 754) "permits the sentencing court to consider the facts underlying dismissed counts and enhancements when determining the appropriate disposition for the offense or offenses of which the defendant stands convicted." (*People v. Munoz* (2007) 155 Cal.App.4th 160, 167.)

**The probation report**

The probation report recommended the second strike midterm of four years consistent with the negotiated disposition.

It also recommended victim restitution to R.C. and V.L. and to the victim restitution fund in amounts to be determined (§ 1202.4, subd. (f)); imposition of a restitution fine of $300 (§ 1202.4, subd. (b)), suspended imposition of the parole revocation fine of $300 (§ 1202.45), and fees of $40 and $30 pursuant to sections 1465.8 and Government Code section 70373.

The report stated that efforts to obtain statements from R.C. and V.L had been unsuccessful. The report did not make any recommendations for protective orders.

**Sentencing hearing**

On September 26, 2018, the court conducted the sentencing hearing for defendant's conviction of count 2, criminal threats against R.C. The court asked the parties if they were willing to submit on the recommendation in the probation report. Defense counsel agreed. The prosecutor said she would submit the matter "on the plea bargain and the request for the ten-year criminal protective order."

The court imposed the midterm of two years, doubled to four years as the second strike term. Defense counsel stipulated to the amount of the recommended fines and fees in the probation report, and waived reading them at the hearing.

The minute order and abstract of judgment state the court imposed the fines and fees as recommended in the probation report: a restitution fine of $300 (§ 1202.4, subd. (b)), suspended the parole revocation fine of $300 (§ 1202.45), and victim restitution to R.C. and V.L. in an amount to be determined (§ 1202.4, subd. (f)). The court also imposed a court operations assessment fee of $40 (§ 1465.8) and a criminal conviction assessment fee of $30 (Gov. Code, § 70373).

6.

### *The court issues the protective order*

Also, at the sentencing hearing, the court stated it was going to impose "a formal protective order. This order tells you not to harass, strike, threaten, harm or assault [V.L.] or [R.C.]. You're not allowed to own or possess any firearms," and defendant had to surrender her firearms if she had any. "You cannot come within 500 yards or have any contact with that individual. We'll give you a copy of that protective order." Defense counsel did not object.

### *The provisions of the protective order*

The protective order is part of the instant record and states that it was issued pursuant to section 136.2, subdivision (i)(1),[4] it was served on defendant at the sentencing hearing, and it was effective until September 26, 2028. The copy of the order in this court's record has deleted the identities of the people who were protected under the order, but the parties in this appeal agree that the two named parties are R.C. and V.L.

The order prohibits defendant from having any personal, electronic, telephonic, or written contact with the protected persons; no contact through a third party, except an attorney of record; and not to come within 500 yards of the protected persons.

On November 26, 2018, defendant filed a notice of appeal, and requested and received a certificate of probable cause based on the allegation that her conviction and sentence should be "fixed" according to "the new laws that have taken effect already."

## DISCUSSION

### I.  Inclusion of V.L. in the Postjudgment Protective Order

Defendant contends that the court lacked statutory authority under section 136.2, subdivision (i)(1) to included V.L. in the protective order that it issued at the sentencing hearing. Defendant argues she only pleaded no contest to count 2, criminal threats against R.C., but V.L. was identified as the victim of count 3, which was dismissed as

---

**4**      As we will explain below, section 136.2, subdivision (i)(1) provides for the court to issue a postjudgment protective order for victims of domestic violence.

part of the plea agreement, and the dismissed charge cannot be the basis for the order imposed under subdivision (i)(1). Defendant requests this court strike V.L. from the order.

## A.   *Section 136.2, Subdivision (i)(1)*

Section 136.2, subdivision (i)(1) authorizes a trial court to issue a postjudgment protective order in domestic violence cases to prohibit contact between the defendant and a victim, and states in relevant part:

> "When a criminal defendant has been convicted of a crime involving domestic violence as defined in Section 13700 or in Section 6211 of the Family Code …, the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact *with a victim of the crime*. The order may be valid for up to 10 years, as determined by the court. This protective order may be issued by the court regardless of whether the defendant is sentenced to the state prison or a county jail or subject to mandatory supervision, or whether imposition of sentence is suspended and the defendant is placed on probation. It is the intent of the Legislature in enacting this subdivision that the duration of a restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, *and the safety of a victim and the victim's immediate family*." (§ 136.2, subd. (i)(1), italics added.)

As used in section 136.2, "'[v]ictim' means any natural person with respect to whom there is reason to believe that any crime as defined under the laws of this state or any other state or of the United States is being or has been perpetrated or attempted to be perpetrated." (§ 136, subd. (3); accord, *People v. Race* (2017) 18 Cal.App.5th 211, 217 (*Race*).)

Family Code section 6211 defines domestic violence as abuse committed against a current or former spouse or cohabitant, a person who was in a dating or engagement relationship with the defendant, and a person who had a child with the defendant, or someone who the defendant was or is in a dating relationship with. (Fam. Code, § 6211, subds. (a)–(e).)

8.

This definition of domestic violence also includes abuse committed against a "person related by consanguinity or affinity within the second degree." (Fam. Code, § 6211, subd. (f).) "'Affinity,' when applied to the marriage relation, signifies the connection existing in consequence of marriage between each of the married persons and the blood relatives of the other." (Fam. Code, § 6205.) "Lineal kinship or consanguinity is the relationship between two persons, one of whom is a direct descendant of the other." (Prob. Code, § 13, subd. (b).) "[P]arent and child are related in the first degree of lineal kinship or consanguinity, grandchild and grandparent are related in the second degree, and great-grandchild and great-grandparent are related in the third degree." (*Ibid*.) "Collateral kinship or consanguinity is the relationship between two people who spring from a common ancestor, but neither person is the direct descendent of the other." (*Id*., subd. (c).) "[S]iblings are related in the second degree of collateral kinship or consanguinity, an aunt or uncle and a niece or nephew are related in the third degree, and first cousins are related in the fourth degree." (*Ibid*.; accord, *People v. Williams* (1997) 16 Cal.4th 635, 653.)

For purposes of section 136.2, domestic violence and abuse under Family Code section 6211 have been interpreted to include a conviction for violating section 422, criminal threats against a person defined as a victim under the statute. (*People v. Caceres* (2019) 39 Cal.App.5th 917, 922.)

**B.      *Interpretation of Section 136.2, Subdivision (i)(1)***

In *People v. Delarosarauda* (2014) 227 Cal.App.4th 205 (*Delarosarauda*), the defendant was convicted by a jury of committing multiple assaultive offenses against the victim, identified as his spouse or cohabitant. At the sentencing hearing, the court issued a criminal protective order as to the victim and her two children, later clarifying that one child was a collateral victim because she witnessed the incident and qualified as a victim under the statute. The defendant was the father of the second child, and the trial court

9.

was willing to lift the order only if the defendant obtained a family court order allowing him contact with his child. (*Id*. at pp. 208–210.)

*Delarosarauda* held the court improperly included both children in the protective order based on the facts of the case because the defendant was only convicted of assaulting the victim, who was his spouse or cohabitant: "On the record before the trial court, there was no reason to believe that any crime was being or had been perpetrated or attempted to be perpetrated against [the children]. [The victim] testified [the defendant] 'never touched' the children, and no evidence suggests that [he] ever attempted to harm them. [The victim] thought the children were in another room at the time of the incident, and she never saw [her daughter] in the bedroom." (*Delarosarauda*, *supra*, 227 Cal.App.4th at p. 211.)

*Delarosarauda* noted, however, that the subject of a protective order pursuant to section 136.2, subdivision (i)(1) need not be a named victim of one of the offenses for which a defendant stands convicted, if there was some evidence the individual had been "targeted or harmed" by the defendant. (*Delarosarauda*, *supra*, 227 Cal.App.4th at p. 212.)

In *Race*, the defendant was initially charged with separate counts for sexually molesting both his daughter and his niece. The defendant pleaded no contest to the charge involving his niece, and the court dismissed the charges involving his daughter. He stipulated to the police report, preliminary hearing, and complaint as the factual basis for the plea, and entered a *Harvey* waiver for sentencing purposes on the dismissed counts. At the sentencing hearing, the court imposed a 10-year protective order for both the defendant's niece and daughter pursuant to section 136.2, subdivision (i)(1). Defense counsel did not object, and the defendant said he was not worried about the order. On appeal, however, the defendant argued the court could not include his daughter in the protective order since he only pleaded to the charge based on his niece, and his *Harvey* waiver did not extend to the court's issuance of the protective order. He also argued his

attorney was ineffective for failing to object.  (*Race*, *supra*, 18 Cal.App.5th. at pp. 216, 219–220.)

*Race* held the protective order was legally authorized because section 136.2 "defines a 'victim' in a broad enough manner in which to include a victim of a charged count of which defendant *does not stand convicted* so long as the court had some competent evidence before it with which to conclude there was reason to believe the individual was a victim of *a broadly defined domestic-violence-related offense* involving harm or attempted harm such that a criminal protective order should be issued." (*Race*, *supra*, 18 Cal.App.5th at p. 216, italics added.)  "[T]he term 'victim' pursuant to section 136.2 criminal protective orders must be construed broadly to include any individual against whom there is 'some evidence' from which the court could find the defendant had committed or attempted to commit some harm within the household.  In the instant case, sufficient evidence supported the criminal protective order issued with respect to defendant's daughter."  (*Id*. at p. 219, fn. omitted.)

*Race* held that given the broad construction of the term, the order was legally authorized, but the defendant forfeited his challenge to the sufficiency of the evidence to support the order since he did not object and actually agreed to it.  However, *Race* held defense counsel's failure to object was not prejudicial.  (*Race*, *supra*, 18 Cal.App.5th at p. 219, fn. 4.)  The defendant stipulated to certain documents as the factual basis for the plea, they contained descriptions that the defendant sexually assaulted his daughter, and constituted "sufficient evidence for the court to conclude that defendant's daughter had been harmed within the household such that a protective order against him should issue." (*Id*. at p. 219.)

*Race* also addressed the defendant's argument that his *Harvey* waiver on the dismissed count about his daughter did not extend to the issuance of the protective order. (*Race*, *supra*, 18 Cal.App.5th at pp. 219–220.)

11.

"We agree that neither defendant's *Harvey* waiver nor his stipulation to a factual basis for the plea extended to the facts underlying the … charge [based on his daughter], to which defendant did not plead, with respect to most issues other than sentencing. However, we hold that in considering the issuance of a criminal protective order, a court is not limited to considering the facts underlying the offenses of which the defendant finds himself convicted, regardless of the execution of a *Harvey* waiver. Rather, in determining whether to issue a criminal protective order pursuant to section 136.2, *a court may consider all competent evidence before it. Here, the court had before it sufficient competent evidence with which to properly determine that a criminal protective order as to defendant's daughter should issue.*" (*Race*, *supra*, 18 Cal.App.5th at p. 220, italics added.)

## C.    *Analysis*

"With respect to the issuance of *a legally authorized criminal protective order*, ""[w]e imply all findings necessary to support the judgment, and our review is limited to whether there is substantial evidence in the record to support these implied findings.'" [Citation.]'" (*Race*, *supra*,18 Cal.App.5th at p. 217, italics added.)

As explained above, the parties stipulated to the "police report" as the factual basis for defendant's no contest plea to committing criminal threats against R.C, with the *Harvey* waiver as to the dismissed charges. The record does not include any law enforcement reports to which the court and parties may have stipulated. The probation report indicates the sheriff's department investigated the case. The probation report contained a summary of the report from the sheriff's department that identified R.C. as defendant's sister. Defendant was thus convicted of a crime involving domestic violence and, as defendant concedes, R.C. was properly included as a victim in the protective order issued under section 136.2, subdivision (i)(1).

As explained in *Race* and *Delarosarauda,* a person may be included as a victim in a section 136.2, subdivision (i)(1) protective order even if that person was not the victim of the offense to which the defendant was convicted of, or pleaded guilty or no contest to. Thus, the court's inclusion of V.L. in the protective order could have been valid within the statute if supported by "sufficient competent evidence with which to properly determine that a criminal protective order as to [the individual] should issue." (*Race*,

12.

*supra*, 18 Cal.App.5th at p. 220.) While the commission of criminal threats in violation of section 422 is an act of domestic violence (*People v. Caceres*, *supra*, 39 Cal.App.5th at p. 922), defendant must have committed the abuse against a "person related by consanguinity or affinity within the second degree" (Fam. Code, § 6211, subd. (f)).

The appellate record is not as clear as to whether V.L. was properly included as a victim in the protective order within the meaning of section 136.2, subdivision (i)(1). The probation report's factual summary stated that after the fire at R.C.'s house, the deputies responded "to another residence" and contacted V.L. about a criminal threat investigation "that appeared to be possibly related" to what had just happened to R.C. V.L. reported that earlier that morning, "she received a text message from the defendant containing a photograph of a Molotov cocktail."

Defendant was charged in count 3 with committing a criminal threat against V.L., apparently based on the photograph of the Molotov cocktail sent to V.L. through a text message. It appears that defendant used a similar incendiary device to start the fire on R.C.'s patio. In order for the court to issue a protective order for a victim under section 136.2, subdivision (i)(1), however, there must be evidence that defendant committed a crime of domestic violence, defined as abuse committed against a person "related by consanguinity or affinity within the second degree." (Fam. Code, § 6211, subd. (f).)

While defendant and R.C. were siblings, the appellate record is completely silent as to the nature and circumstances of defendant's relationship to V.L. The probation report's factual summary, based on the sheriff's department's investigative report, simply states that when the deputies responded to V.L.'s house after the fire at R.C.'s house, they determined V.L.'s report about the Molotov cocktail text message "appeared to be possibly related" to what happened at R.C.'s house. The appellate record does not explain why the deputies believed the two incidents were possibly related.

13.

We find the record on appeal does not contain competent evidence to support the court's inclusion of V.L. as a victim in the protective order issued under section 136.2, subdivision (i)(1). The People assert defendant forfeited review of V.L.'s inclusion in the protective order since she failed to object at the sentencing hearing. Defendant acknowledges her attorney failed to object but asserts she has not forfeited review of this issue since the court lacked jurisdiction to impose an unauthorized sentence, and counsel was prejudicially ineffective for failing to object to an unauthorized order.

While defense counsel did not object to the protective order, we cannot say that counsel was necessarily ineffective for failing to do so. The brief factual summary contained in the appellate record fails to reveal the relationship, if any, between defendant and V.L., but the court and the parties seemed to be aware of the circumstances of the charged offenses. Moreover, the record implies they had the investigative reports before them, which the parties stipulated to as the factual basis for defendant's plea.

It is entirely possible there was competent evidence, similar to that discussed in *Race*, that showed V.L. was a victim of domestic violence within the meaning of section 136, subdivision (i)(1) and Family Code 6211. Under these circumstances, however, we cannot analyze the sufficiency of the evidence to support the inclusion of V.L. as a victim within the meaning of section 136.2, subdivision (i)(1). Given the state of the record, we will remand the matter for the court to clarify the factual basis for the protective order under section 136.2, subdivision (i)(1), and explain on what basis it concluded V.L. as a victim of domestic violence, as defined in that subdivision. We do not believe that remand will be an idle act and it is appropriate under the circumstances of this case.

## II.     Section 136.2, Subdivision (i)(2)

As an alternative basis, the People argue this court should affirm the inclusion of V.L. in a protective order based on the provisions of section 136.2, subdivision (i)(2), which protects percipient witnesses in domestic violence cases. While the court did not

14.

rely on subdivision (i)(2) to impose the order, we address this issue for the benefit of the parties on remand.

### A.     *A Protective Order for a Percipient Witness*

Section 136.2, subdivision (i)(2) states in relevant part:

> "When a criminal defendant has been convicted of a crime involving domestic violence as defined in Section 13700 or in Section 6211 of the Family Code …, the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact *with a percipient witness to the crime* if it can be established by clear and convincing evidence that the witness has been harassed, as defined in paragraph (3) of subdivision (b) of Section 527.6 of the Code of Civil Procedure, by the defendant."  (§ 136.2, subd. (i)(2), italics added.)

"'Witness' means any natural person, (i) having knowledge of the existence or nonexistence of facts relating to any crime, or (ii) whose declaration under oath is received or has been received as evidence for any purpose, or (iii) who has reported any crime to any peace officer, prosecutor, probation or parole officer, correctional officer or judicial officer, or (iv) who has been served with a subpoena issued under the authority of any court in the state, or of any other state or of the United States, or (v) who would be believed by any reasonable person to be an individual described in subparagraphs (i) to (iv), inclusive."  (§ 136, subd. (2).)

To issue a protective order for a percipient witness in a domestic violence case, there must be clear and convincing evidence that the witness has been "harassed" by the defendant.  (§ 136.2, subd. (i)(2).)  For purposes of subdivision (i)(2), the term "'[h]arassment'" is defined as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose.  The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner."  (Code Civ. Proc., § 527.6, subd. (b)(3).)

15.

"Clear and convincing evidence requires a specific type of showing—one demonstrating a '"high probability"' that the fact or charge is true." (*In re White* (2020) 9 Cal.5th 455, 467.) The evidence must "be '"so clear as to leave no substantial doubt"; "sufficiently strong to command the unhesitating assent of every reasonable mind."'" (*In re Angelia P.* (1981) 28 Cal.3d 908, 919; accord, *People v. Mary H.* (2016) 5 Cal.App.5th 246, 256.)

**B.**     *Analysis*

Defendant was convicted of a crime involving domestic violence as defined in section 136.2, subdivision (i)(2), and Family Code section 6211, given her no contest plea to committing criminal threats against her sister, R.C. a person "related by consanguinity or affinity within the second degree." (Fam. Code, § 6211, subd. (f); accord, *People v. Williams*, *supra*, 16 Cal.4th at p. 653.)

V.L. would be within the provisions of section 136.2, subdivision (i)(2), if she was a "percipient witness" to the criminal threats that defendant committed against R.C., and defendant harassed V.L. because she was a witness. As with the requirements of section 136.2, subdivision (i)(1), however, the appellate record is silent as to the relationship, if any, between defendant, V.L. and R.C., and why the deputies thought defendant's text message to V.L. of the Molotov cocktail was possibly related to defendant's threat to R.C. and the incendiary device that defendant threw onto R.C.'s property.

There is hardly clear and convincing evidence in the appellate record to suggest that V.L. would be a percipient witness under section 136.2, subdivision (i)(2). On remand, however, the court may consider whether there is clear and convincing evidence to support a protective order under this subdivision.

**III.    The Terms of the Protective Order as to R.C.**

Defendant concedes R.C. was properly the subject of the section 136.2, subdivision (i)(1), since R.C. was the victim of the offense to which defendant entered

her plea, count 2, criminal threats.  However, defendant argues the order was overbroad and violated her constitutional right to travel because it prohibited her from coming within 500 yards of R.C.  Defendant asserts the order's broad scope exceeds any possible purpose since 500 yards amounts to an 18-acre area and suggests the order should be reduced to 50 feet.[5]  Defendant again acknowledges defense counsel failed to object to the protective order, but argues the issue may be reviewed since counsel was prejudicially ineffective for failing to object to a term that was constitutionally overbroad.

### A.    *The Right to Travel*

A restraining or protective order necessarily impacts the restrained party's right to move about freely and thus impacts that person's constitutional rights.  (*People v. Contreras* (2015) 237 Cal.App.4th 868, 882.)  The court must craft an order that protects the aggrieved parties while intruding on any constitutional right only to the extent reasonably necessary to effectuate that protection.  (*In re White* (1979) 97 Cal.App.3d 141, 149 (*White*); *People ex rel. Reisig v. Acuna* (2017) 9 Cal.App.5th 1, 22.)  Whether the order is constitutional is a question of law subject to de novo review.  (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 497.)

"Although not explicitly guaranteed in the United States Constitution, '[t]he right to travel, or right of migration, now is seen as an aspect of personal liberty which, when united with the right to travel, requires "that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement."'  [Citations.]  This right also includes the right of intrastate travel, which 'has been recognized as a basic human right protected by article I, sections 7 and 24 of the California Constitution.'  [Citation.]  Like all constitutional rights, the right to travel is subject to limits .…'"  (*People v. Moran* (2016) 1 Cal.5th 398, 405–406.)  The right to travel is not absolute and may be reasonably

---

[5]    A distance of 500 yards is "almost a third of a mile."  (*In re McSherry* (2003) 112 Cal.App.4th 856, 863, fn. 4.)

restricted in the public interest. (*White*, *supra*, 97 Cal.App.3d at p. 149; *Halajian v. D & B Towing* (2012) 209 Cal.App.4th 1, 12.) The courts of this state "have found violations only when a direct restriction of the right to travel occurred." (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1101.)

In *People v. Petty* (2013) 213 Cal.App.4th 1410, the defendant attended a party at a friend's house and stole jewelry worth $9,500 from the bedroom of his friend's parents. The defendant pleaded guilty to felony grand theft and was placed on probation, with the condition requiring him "to stay at least 50 yards from the victim's residence and 100 yards from the victim and her daughter." (*Id* at p. 1413.) *Petty* held the distance order did not violate the defendant's right to travel, and there was "no substantial interference" with his constitutional rights, because "[t]he intrusion on [his right to] travel is minimal by comparison and the forbidden zone is specifically linked to his past crime." (*Id.* at p. 1422.) Any impact on the defendant's right to travel was "strictly limited, as is the impact on his freedom of association. He has no 'right' to associate with those who shun him because of his past crimes against them." (*Id*. at p. 1424.)

**B.** *Analysis*

We first note that defendant did not object to any part of the protective order, and the People assert that defendant has forfeited his challenge. In the alternate, defendant argues counsel was ineffective for failing to object. As we will explain, however, defense counsel was not prejudicially ineffective for failing to do so.

Defendant sent a threatening text message to R.C., her sister, that she was going to be right over to get her. Shortly afterwards, R.C. heard a loud explosion behind her house, discovered the patio area was on fire, and saw defendant drive away in the alley behind her house. After the fire was extinguished, the deputies found a large, brown, glass alcohol bottle shattered under a table on the back patio and could see what looked like the neck of the bottle with a burnt cloth inside of it.

18.

Defendant suggests the protective order should be modified to limit the distance to 50 feet.  As in *Petty*, however, the distance specified in the protective order was specifically related to how defendant carried out the criminal threat and attempted arson.  Defendant's behavior was intrusive, reckless, and dangerous.  She drove to R.C.'s residence, pulled into the alley, threw some type of ignition device into her backyard patio that started a fire, and fled in her car.  In contrast to the blanket prohibition against entering a designated map area rejected in *White*, defendant may travel anywhere she chooses, except she must stay the specified distance away from R.C. and her residence.  Therefore, we reject her claim of prejudicial error.

## IV.    *Dueñas* Claim

In this case, the trial court imposed the statutory minimum restitution fine of $300 under section 1202.4, subdivision (b)(1); a parole revocation restitution fine of $300 under section 1202.45, subdivision (a), suspended; a court operations assessment of $40 under section 1465.8; and a court facilities assessment of $30 under Government Code section 70373.  Pursuant to the Court of Appeal's decision in *Dueñas*, *supra*, 30 Cal.App.5th 1157, defendant requests we order the trial court to strike the fines and assessments until the prosecution proves she has the ability to pay.

For the reasons set forth in our recent decision in *Montes*, we reject the People's forfeiture argument and, on remand, the trial court shall allow defendant to raise the issue of her ability to pay the fines and court assessments, and to make a record on those issues.  (*Montes*, *supra*, 59 Cal.App.5th at pp. 1118–1124.)

### A.    Forfeiture

As we recognized in *Montes*, "the failure to object in the trial court generally forfeits a claim on appeal and this principle is applicable to constitutional claims. (§ 1259, *People v. McCullough* (2013) 56 Cal.4th 589, 593; *In re Sheena K.* (2007) 40 Cal.4th 875, 880–881.)  There are exceptions to this general rule, however, and courts of review have the discretion to consider an issue notwithstanding the failure to object.

19.

(*People v. McCullough*, *supra*, at p. 593; *In re Sheena K.*, *supra*, at pp. 887–888, fn.7.)" (*Montes*, *supra*, 59 Cal.App.5th at pp. 1117–1118.)

Relevant here, "[t]he restitution statute [expressly] provides that the inability to pay is not a 'compelling and extraordinary reason not to impose a restitution fine[]' (§ 1202.4, subd. (c)), but where … a trial court imposes a restitution fine *above* the statutory minimum, the court may consider the defendant's inability to pay in setting the fine (§ 1202.4, subd. (d))." (*Montes*, *supra*, 59 Cal.App.5th at p. 1118, italics added.) Because the trial court here imposed a minimum restitution fine of $300, defendant was precluded from objecting to the fine based on her inability to pay. (*Ibid.*, citing § 1202.4, subd. (c).)

Additionally, "'[r]eviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile or wholly unsupported by substantive law then in existence.' (*People v. Welch* (1993) 5 Cal.4th 228, 237; accord, *People v. Gomez* (2018) 6 Cal.5th 243, 286–287; *People v. Black* (2007) 41 Cal.4th 799, 810.)" (*Montes*, *supra*, 59 Cal.App.5th at p. 1119.) "In cases such as this, involving the imposition of the statutory minimum restitution fine and mandatory court assessments, the decision in *Dueñas* constituted a marked departure from existing law" (*ibid.*), and "[g]iven the statutory language of section 1202.4 and the state of the substantive law prior to *Dueñas*, we conclude that defendant did not forfeit his *Dueñas* claim by failing to object to the minimum restitution fine and court assessments in the trial court" (*id.* at p. 1121; accord, *People v. Son* (2020) 49 Cal.App.5th 565, 596–597; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1031).

**B.    Remand Appropriate Due to Undeveloped Record**

As explained in *Montes*, "[w]here, as [here], a defendant advances a claim premised on a significant and unforeseeable development in the law that occurred after sentencing and during the pendency of the appeal; there was no statutory right to object to the restitution fine and court assessments at issue; and the record is wholly

undeveloped on the issue, a limited remand is appropriate to allow the parties to address the issue in the trial court in the first instance." (*Montes*, *supra*, 59 Cal.App.5th at p. 1122.) "Discretion to determine an appropriate fine amount rests with the trial court and the court is free to consider, among other factors, any money received by a defendant, be it in the form of prison wages or gifts. (*People v. Potts* (2019) 6 Cal.5th 1012, 1055–1056 [concluding trial court could lawfully impose $10,000 restitution fine despite condemned inmate's categorical ineligibility to earn prison wages and his receipt of only occasional small gifts of money from family, and rejecting argument 'that a fine is automatically invalid if a defendant is unable to pay it'].)" (*Ibid.*)

## DISPOSITION

The section 136.2, subdivision (i)(1), order is vacated. The matter is remanded for the court to issue a modified order that only protects R.C. consistent with the provisions of the original order. The court shall determine whether V.L. is a party that may be protected under the applicable statutory provisions and circumstances of this case; if the court so determines, it shall explain the factual basis for the inclusion of V.L. and issue a separate order for the protection of V.L. In addition, on remand, defendant may raise the issue of her ability to pay the fines and assessments imposed. If any change to the judgment results, the trial court shall forward an amended abstract of judgment to the appropriate authorities. In all other respects, the judgment is affirmed.


MEEHAN, J.

I CONCUR:



DeSANTOS, J.

21.

POOCHIGIAN, Acting P.J., Concurring and Dissenting.

I concur with the majority opinion's directions to vacate the Penal Code section 136.2, subdivision (i)(1) order, and remand for the court to issue a modified order as to R.C. and determine whether V.L. is subject to protection.

As in *People v. Montes* (Jan. 15, 2021, F078357) 59 Cal.App.5th 1107, however, I respectfully dissent from the decision that defendant may raise on remand the issue of her ability to pay the restitution fine and assessments imposed.

As explained in *People v. Aviles* (2019) 39 Cal.App.5th 1055 (*Aviles*), I believe *People v. Dueñas* (2019) 30 Cal.App.5th 1157 was wrongly decided and an Eighth Amendment analysis is more appropriate to determine whether restitution fines, fees, and assessments in a particular case are grossly disproportionate and thus excessive. Under that standard, the fines and fees imposed in this case are not grossly disproportionate to defendant's level of culpability and the harm he inflicted, and thus not excessive under the Eighth Amendment. (*Id.* at pp. 1068–1072.)[1]

To the extent it is argued *Dueñas* applies to this case, the court imposed the minimum restitution fine of $300, and defendant lacked the statutory authority to object to that order under the governing law at the time of his sentencing hearing. (Cf. *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153–1154.)

Even if I agreed with *Dueñas*, I would reject defendant's constitutional claims and find any error arising from the court's failure to make an ability to pay finding was harmless beyond a reasonable doubt, since defendant has the ability to pay the fines and fees imposed in this case. (*Chapman v. California* (1967) 386 U.S. 18, 24; *Aviles, supra*, 39 Cal.App.5th at pp. 1075–1077; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1030–1031.)

---

[1] The California Supreme Court is currently considering whether trial courts must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments; and if so, which party bears the applicable burden of proof. (See *People v. Kopp* (2019) 38 Cal.App.5th 47, 94–98, review granted Nov. 13, 2019, S257844.)

" ' "Ability to pay does not necessarily require existing employment or cash on hand." [Citation.] "[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's *present* ability but may consider a defendant's ability to pay in the future." [Citation.] This include[s] the defendant's ability to obtain prison wages and to earn money after his release from custody. [Citation.]' [Citations.]" (*Aviles, supra*, 39 Cal.App.5th at p. 1076.)

It can be inferred from the record that defendant has the ability to pay the aggregate amount of fines and fees from probable future wages, including prison wages. (*Aviles, supra*, 39 Cal.App.5th at p. 1076; *People v. Ellis* (2019) 31 Cal.App.5th 1090, 1094; *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397.) I believe *People v. Potts* (2019) 6 Cal.5th 1012 (*Potts*) is persuasive on this particular point. The trial court in *Potts* ordered a defendant convicted of capital murder to pay the statutory maximum restitution fine of $10,000, partially based on the probation officer's erroneous statement that a condemned inmate would be assigned a job in prison. At the time of the hearing, the applicable restitution statute permitted the court to consider the defendant's inability to pay, but the defendant did not object. (*Id.* at p. 1055.) The defendant filed a postjudgment motion for the court to reduce the fine because of the court's mistake and his inability to pay and argued his own source of income in prison was limited to small financial gifts from family and friends. The court denied the motion and found that seizing even a small part of the defendant's income was a minimal burden considering the incredible loss he inflicted to the victim's family. (*Id.* at pp. 1055–1056.)

*Potts* held the trial court abused its discretion when it imposed the fee based on the erroneous belief that a defendant sentenced to death would be permitted to work. However, *Potts* held the error was harmless beyond a reasonable doubt based on the court's findings when it denied the postjudgment motion to modify the fine. (*Potts, supra*, 6 Cal.5th at pp. 1055, 1056.) *Potts* explained that the defendant's alleged inability to pay because he lacked a prison job would be "blunted by the fact that he would retain

2

at least some of the money sent to him" by family and friends.  (*Id.* at p. 1056.)  The trial court was "permitted to conclude that the monetary burden the restitution fine imposed on defendant was outweighed by other considerations," such as the seriousness and gravity of the offense, and the circumstances of its commission.  (*Id.* at pp. 1056–1057.)

There is nothing in the record to show that defendant in this case would be unable to satisfy the fines and fees imposed by the court while serving her term of four years, even if she fails to obtain a prison job.  While it may take defendant some time to pay the amounts imposed in this case, that circumstance does not support her inability to make payments on these amounts from either prison wages or monetary gifts from family and friends during his prison sentence.  (See, e.g., *Potts, supra*, 6 Cal.5th at pp. 1055–1057; *People v. Lewis* (2009) 46 Cal.4th 1255, 1321; *People v. DeFrance* (2008) 167 Cal.App.4th 486, 505.)

I would remand for the limited purposes as explained in the majority opinion, and otherwise affirm.


POOCHIGIAN, Acting P.J.

3