Filed 4/11/16  P. v. Salas CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL ANGELO SALAS,<br><br>    Defendant and Appellant. | E063227<br><br>(Super.Ct.No. INF1403368)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Anthony R. Villalobos, Judge.  Affirmed as modified.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Scott C. Taylor and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Michael Angelo Salas guilty of corporal injury resulting in a traumatic condition (Pen. Code, § 273.5, subd. (a)),[1] misdemeanor false imprisonment (§ 236) and simple battery (§ 242). The trial court placed defendant on formal probation for five years and included a condition that defendant "reside at a residence approved by the probation officer." On appeal, defendant argues this probation condition is not related to the crime or future criminality, is unconstitutionally overbroad and impairs his rights to travel and freedom of association. We affirm the judgment, with directions to modify the probation condition to replace the approval requirement with a notice requirement.

### FACTUAL BACKGROUND

Defendant and Rikki S. were in a volatile, three-year dating relationship. They had a one-year-old child together. Defendant lived in an apartment and Rikki lived not far away at her grandmother's house. During that period, Rikki lived with defendant for about five months.

On July 27, 2014, defendant was upset that he and Rikki were no longer together. Around 3:00 a.m., defendant walked to Rikki's grandmother's house. He encountered Rikki's cousin in the driveway. The cousin, who is five feet, four inches tall and weighed 120 pounds, told defendant to leave. Defendant walked past the cousin and knocked on the front door. Rikki answered the door and spoke with defendant for a short time, but refused to leave with him and told him to leave. Defendant left. As he walked past the

---

[1] All section references are to the Penal Code unless otherwise indicated.

cousin, he punched the cousin in the face, causing him to fall down and the back of his head to hit the ground. The cousin rolled over and defendant got on top of him and punched him repeatedly in the back of the head. Rikki unsuccessfully tried to pull defendant off her cousin, and then went back inside to get her father. Defendant ran away. The cousin had two bleeding cuts on his head and blood on his face and hands. Defendant practiced mixed martial arts and was familiar with many fighting techniques.

On December 16, 2014, Rikki went to defendant's apartment to pick up their infant daughter. Defendant was angry because he believed Rikki was cheating on him. Rikki picked up the baby in the carrier and tried to go out through the front door. Defendant put the baby aside and would not let Rikki leave. When Rikki tried to go out the back door, defendant grabbed her from behind and put her in a choke hold with his arms around her neck. Rikki could not breathe. She felt her neck crack, and then her spine crack as defendant bent them both backward. Defendant threw himself on the bed with him underneath her, still strangling her. Rikki felt like she was about to black out and thought she was going to die. She kept tapping defendant on the arm and he eventually released her. Rikki ran to a friend's apartment nearby and asked for help to retrieve her daughter and her car keys. The friend and another person went to defendant's apartment with Rikki. Defendant gave Rikki the baby and her car keys. As they drove away, defendant jumped on the hood of the car and said he would sue Rikki if she ran over him. At that point, Rikki called 911.

## DISCUSSION

Defendant argues the residence approval condition of his probation should be stricken because it is not related to the crime or future criminality, is unconstitutionally overbroad and impairs his rights to travel and freedom of association. The People argue defendant forfeited his challenge to the residency condition because he failed to object at the sentencing hearing and his claim does not fall under the narrow exception to the forfeiture rule. In the alternative, the People assert the residency restrictions on defendant's constitutional rights to travel and association are not overbroad but are reasonably related to the crimes defendant committed and to his future criminality.

Among other terms and conditions of probation, the court included the following requirements: "Inform the probation officer of your place of residence and reside at a residence approved by the probation officer. [¶] Give written notice to the probation officer 24 hours before changing your residence and do not move without the approval of the probation officer." Defendant did not object to this probation condition, and indicated that he did not have any questions about the terms and conditions of his probation and that he had reviewed them.

Where a claim that a probation condition is facially overbroad and violates fundamental constitutional rights is based on undisputed facts, it may be treated as a pure question of law, which is not forfeited by failure to raise it in the trial court. (*In re Sheena K.* (2007) 40 Cal.4th 875, 888-889 (*Sheena K.*); *People v. Welch* (1993) 5 Cal.4th 228, 235.) As the court in *Sheena K.* explained, the doctrine of forfeiture on appeal does not apply to challenges to probation conditions based on "facial constitutional defects"

4

that do "not require scrutiny of individual facts and circumstances." (*Sheena K.*, at pp. 885-886.) However, the forfeiture doctrine does apply if the objection involves a discretionary sentencing choice or unreasonable probation conditions "premised upon the facts and circumstances of the individual case." (*Id*. at pp. 885, 888.)

Here, defendant claims that even though he did not object to this condition on constitutional grounds at sentencing, his overbreadth argument presents a facial constitutional challenge with pure questions of law based on undisputed facts and, thus, can be properly raised on appeal for the first time. We agree with defendant and reject the People's forfeiture argument.[2]

To be valid, a probation condition "must (1) . . . relate[] to the crime of which the defendant was convicted, *or* (2) relate to conduct that is criminal, *or* (3) require or forbid conduct that is reasonably related to future criminality." (*People v. Bauer* (1989) 211 Cal.App.3d 937, 942 (*Bauer*).) "If a probation condition serves to rehabilitate and protect public safety, the condition may 'impinge upon a constitutional right otherwise enjoyed by the probationer, who is "not entitled to the same degree of constitutional protection as other citizens."'" (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1355 (*O'Neil*), quoting *People v. Lopez* (1998) 66 Cal.App.4th 615, 624.) But an otherwise valid condition that impinges upon constitutional rights "must be carefully tailored,

---

[2] We focus on the constitutionality of the condition, not whether it is reasonable as applied to defendant. (See *People v. Lent* (1975) 15 Cal.3d 481, 486 [test for reasonableness of probation conditions].) By failing to object below, defendant has forfeited all claims except a challenge "based on the ground the condition is vague or overbroad and thus facially unconstitutional." (*Sheena K.*, *supra*, 40 Cal.4th at p. 878.)

"'reasonably related to the compelling state interest in reformation and rehabilition . . . .'"'" (*Bauer*, *supra*, 211 Cal.App.3d at p. 942, quoting *In re White* (1979) 97 Cal.App.3d 141, 146.)

A probation condition cannot be overbroad. "A restriction is unconstitutionally overbroad . . . if it (1) 'impinge[s] on constitutional rights,' and (2) is not 'tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation.' [Citations.] The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

However, even a facial challenge to constitutionality requires more than a one-size-fits-all approach. Our inquiry does not take into account the individual facts pertaining to this particular probationer—as would an "as applied" challenge—but it must take into account the nature of the case and the goals and needs of probation in general. For example, what is constitutional in a case involving drug usage is not necessarily the same as what is constitutional in a theft-related case or, as here, a case involving domestic violence. This broad consideration of the nature of the case must inform all decisions about whether the condition has been "narrowly tailored," even where, as here, we do not reach the personal circumstances of the probationer.

Here, the offenses are corporal injury to a domestic partner, simple battery and misdemeanor false imprisonment. The appropriate inquiry therefore, is whether the

6

probation condition is reasonably related to the supervision of a person convicted of those crimes. In that regard, we find *Bauer* instructive. In *Bauer*, the defendant was convicted of false imprisonment and assault. As a probation condition, the trial court required the defendant to "obtain his probation officer's approval of his residence . . . ." (*Bauer*, *supra*, 211 Cal.App.3d at p. 940.) The *Bauer* court held this condition failed the requirements for probation conditions, as it was not related to the defendant's crime and was not related to future criminality. (*Id*. at p. 944.) The *Bauer* court further concluded the restriction was unconstitutionally overbroad, explaining "[t]he condition is all the more disturbing because it impinges on constitutional entitlements—the right to travel and freedom of association. Rather than being narrowly tailored to interfere as little as possible with these important rights, the restriction is extremely broad," and gave the probation officer broad power over the defendant's living situation. (*Id*. at pp. 944-945.)

*Bauer* has been accepted since it was decided over 25 years ago, and has been applied in analyzing other probation conditions. For example, in *O'Neil*, *supra*, 165 Cal.App.4th 1351 (a case involving drug sales but not usage), the appellate court found a probation condition prohibiting the probationer from associating with persons not approved by his probation officer to be unconstitutionally overbroad. (*Id*. at p. 1357-1358.) Relying on *Bauer*, the *O'Neil* court explained the probation condition placed no limits or guidelines on the probation officer's discretion. Thus, "[w]ithout a meaningful standard, the order is too broad and it is not saved by permitting the probation department to provide the necessary specificity." (*O'Neil*, at p. 1358.)

The probation condition here suffers from the same infirmity as the one in *Bauer*. It puts no limits on the probation officer's discretion. Probationer's residence could be disapproved for any reason, including inconvenience. The nature of the crimes does not suggest a need for such unfettered oversight, so we cannot approve this broad restriction. Further, there is nothing in the record to show that where defendant lived contributed to the crimes. Although defendant was convicted of inflicting injury on the mother of his child, with whom he had previously lived, and the assault took place in defendant's apartment, *where* defendant actually resided did not increase the opportunity or motive for the attack. The same can be said for the battery on Rikki's cousin—there is nothing in the record to indicate that defendant living within walking distance of the grandmother contributed to his decision or opportunity to commit the crime. Neither was there anything criminal about where defendant resided. Like the court in *Bauer*, we do not find that the condition itself is inappropriate in all circumstances (see *Bauer*, *supra*, 211 Cal.App.3d at p. 944 [finding residence approval condition not related to the defendant and his crimes in the case, but not invalidating the condition in every case]), but that such approval was not related to defendant's crimes and living situation in this case.

Furthermore, the condition is not reasonably related to defendant's future criminality. As defendant argues, he is already subject to criminal protective orders protecting Rikki and her cousin from contact with defendant. As discussed at sentencing, defendant is to have no contact at all with the cousin, whether direct or indirect, and no negative contact with Rikki. Presumably, the trial court anticipated that defendant and Rikki would have to come into contact because they have a child together. For this

8

reason, imposing the residence approval portion of the condition was both unnecessary and unreasonable.

As the People correctly observe, the constitutionality of probation conditions requiring residence approval is presently before our Supreme Court in *People v. Schaeffer* (2012) 208 Cal.App.4th 1, review granted October 31, 2012, S205260. We distinguish this case from *Schaeffer*. In that case, we allowed a similar probation condition to stand based on the defendant's convictions for possessing methamphetamine and being under the influence of a controlled substance. This is because the defendant's residence could negatively impact her rehabilitation should she choose to live in a residence where drugs are used or sold. Here, defendant's residence would have no such foreseeable effect on his rehabilitation from the crimes of violence he committed, especially considering the criminal protective orders and the circumstance that defendant and Rikki have a child together. Because defendant's living situation has not been shown to be reasonably related to future criminality and because there is no nexus between these circumstances and the instant offenses, we conclude that the challenged condition should be modified. We do see the benefit of the probation officer being informed if defendant's residence has changed. We have the power to modify a probation condition on appeal. (See *Sheena K.*, *supra*, 40 Cal.4th at p. 892.) Thus, the challenged probation condition should be modified to read as follows: "Defendant shall keep the probation officer informed of his place of residence and give written notice to the probation officer twenty-four (24) hours prior to a change in residence."

**DISPOSITION**

We modify the residence restriction condition of defendant's probation to read as follows: "Defendant shall keep the probation officer informed of his place of residence and give written notice to the probation officer twenty-four (24) hours prior to a change in residence."

The judgment is affirmed as modified.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ           

P. J.

We concur:

HOLLENHORST     

               J.

McKINSTER      

               J.