Filed 5/5/25 P. v. Zelaya CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br><br>JEFFERSON ZELAYA,<br><br>    Defendant and Appellant. | A170031<br><br>(San Francisco City & County<br>Super. Ct. No. 22014772) |

Jefferson Zelaya challenges a probation condition requiring that he complete all programs identified by the probation department as part of a to-be-determined "individualized treatment plan." He also challenges a probation condition requiring him to avoid the Tenderloin neighborhood of San Francisco "except when traveling for probation ordered services." Zelaya claims the first condition improperly delegates judicial authority to the probation department and both conditions are unconstitutionally vague and overbroad. We agree that both conditions require clarification and tailoring, and remand to the trial court to that end.

## I.  BACKGROUND

Zelaya was arrested at 7th and Minna Streets in San Francisco after an officer saw him give a bagged, white substance to a woman in exchange for cash. Officers searched Zelaya and found bags of cocaine, fentanyl, heroin,

and methamphetamine. They also found empty plastic bags, a pill bottle, and a digital scale. The People charged Zelaya with several drug-related felonies.

In exchange for two years of supervised probation and the dismissal of other charges, Zelaya pleaded guilty to a single count of offering to sell a controlled substance (Health & Saf. Code, § 11352). When he entered his plea, he was advised he "must comply with the terms and conditions of the Adult Probation Department's individualized treatment and rehabilitation plan," to include "drug testing and counseling if appropriate." He would also be subject to a stay-away order to be issued at sentencing, which would incorporate conditions from orders in two other criminal cases against him (Super. Ct. S.F. City & County, Nos. CRI20009081 & CRI23004570). Records from those cases reflect that a stay-away order was entered only in the earlier-filed matter, encompassing "the area bounded by Larkin, Geary, Stockton and Market [Streets]."[1]

The probation department prepared a presentencing report that discussed Zelaya's background and his perceived needs. The report recommended Zelaya be ordered to complete a Spanish language support group and a separate educational program to work towards his GED. It also recommended that Zelaya be ordered to "complete the required services and/or treatment/counseling as identified in [his] Individualized Treatment and Rehabilitation Plan." This plan would be formulated through collaboration with his assigned probation officer. A completed plan is not in the record on appeal, nor is any further detail about what the plan might entail.

---

[1] We grant Zelaya's request for judicial notice of relevant records in these cases and of a map of the Tenderloin neighborhood of San Francisco. (Evid. Code, § 452, subds. (d) & (h); *People v. Bratton* (2023) 95 Cal.App.5th 1100, 1105 [taking judicial notice of Google Maps view of relevant area].)

At sentencing, having read and considered the presentence report, the trial court placed Zelaya on probation and ordered him to enter and complete the individualized treatment plan, and comply with its terms and conditions, "including enrollment and participation in and completion of required services, treatment, testing and counseling." The court stated that "stay-away orders" from Zelaya's other criminal cases were "transferred to this probation." The court then ordered Zelaya to stay away "from [the] area bo[rdere]d by O'Farrell Street, Jones, Market and Van Ness, except for traveling for probation-ordered services." Zelaya was advised that a violation of any of the terms and conditions of probation could result in a judge sentencing him to state prison.

## II. DISCUSSION

Zelaya challenges both the condition that he comply with the probation department's undetermined individualized treatment plan and the condition requiring him to stay out of an area of San Francisco that includes the Tenderloin neighborhood except when traveling for probation-ordered services. He asks us either to strike the conditions or remand the matter to the trial court to modify them. The People defend the first condition and aspects of the second one, conceding we should remand for the court to modify the stay-away order in certain respects.[2]

_____

[2] As the People concede, Zelaya's challenges may proceed although he raised no objection to these conditions at sentencing and did not obtain a certificate of probable cause. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 888–889 (*Sheena K.*) [facial constitutional challenge to probation condition presents a pure question of law not forfeited by failure to object below]; *People v. Patton* (2019) 41 Cal.App.5th 934, 940 [certificate of probable cause not required as to probation conditions imposed at sentencing].) However, Zelaya forfeited any claim that the conditions are unreasonable or unconstitutional as applied to the facts of his case. (See *Sheena K.*, at pp.

3

We review Zelaya's constitutional challenges to these probation conditions de novo.  (*In re Malik J.* (2015) 240 Cal.App.4th 896, 901.)

## A.    *Individualized Treatment Plan*

Zelaya claims the condition that he comply with a to-be-determined individualized treatment plan is an unconstitutional delegation of judicial authority to the probation department and is unconstitutionally vague and overbroad.

"Under the separation of powers doctrine (Cal. Const., art. III, § 3), judicial powers may not be delegated to nonjudicial officers."  (*People v. Smith* (2022) 79 Cal.App.5th 897, 902 (*Smith*).)  It is the trial court's "duty to determine the nature of the requirements imposed on [a] probationer," though the court may allow the probation department to "specify the details necessary to effectuate the . . . conditions."  (*Ibid.*)  For example, the court may "mandate[] treatment for substance abuse based on [an] assessment while leaving the probation officer to oversee the details."  (*Id.* at p. 903.)

Appellate courts have also "disapproved provisions purporting to completely delegate the setting of a condition to the probation department" based on overbreadth.  (*In re D.N.* (2022) 14 Cal.5th 202, 209, fn. 4, citing

---

882, 885–889.)  He offers no argument or authority to support his requests that we strike the conditions altogether notwithstanding this forfeiture, and we decline his invitation to do so.  Further, although the parties assume this court's jurisdiction, we observe that the notice of appeal incorrectly identifies the denial of a motion to suppress as the basis of this appeal.  We do not consider this to be a jurisdictional defect.  (See *People v. Knauer* (1988) 206 Cal.App.3d 1124, 1128.)  We construe the notice liberally " ' "so as to protect the right of appeal," ' " given " ' "it is reasonably clear what [the] appellant was trying to appeal from, and . . . the respondent [was] not . . . misled or prejudiced." ' "  (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 882; see *Childhelp, Inc. v. City of Los Angeles* (2023) 91 Cal.App.5th 224, 234, fn. 3 ["checking the wrong box on a notice of appeal 'is not fatal to the appeal' "].)

4

*Smith* and *People v. O'Neil* (2008) 165 Cal.App.4th 1351 (*O'Neil*).)  As another division of this court held, a probation condition "cannot be entirely open-ended" and must establish some "standard by which the probation department is to be guided."  (*O'Neil*, at pp. 1358–1359 ["The court may leave to the discretion of the probation officer the specification of the many details that invariably are necessary to implement the terms of probation.  However, the court's order cannot be entirely open-ended.  It is for the court to determine the nature of the prohibition placed on a defendant as a condition of probation"].)

The condition imposed here fails to meet these requirements.  The trial court ordered Zelaya to comply with an "individualized treatment and rehabilitation plan, including . . . required services, treatment, testing and counseling."  This is entirely open-ended as it leaves the probation department, in collaboration with Zelaya, to identify (presumably at a later date) the applicable treatment and services.  The order does not specify whether treatment will involve substance abuse or mental health, or whether either type of treatment will be based on an assessment of Zelaya's needs.  Thus, the condition impermissibly delegates to the probation officer the determination of what type of treatment, counseling, or testing Zelaya will be ordered to complete.  It would also appear to require a probation officer, as prohibited in *Smith*, "to decide whether [Zelaya] must attend a residential program, as opposed to an outpatient program."  (*Smith, supra*, 79 Cal.App.5th at p. 903.)  The order allows the probation department to impose treatment for any issues of any kind it may attribute to Zelaya, without the need to validate a connection to Zelaya's past or future criminality.  (See *id.* at p. 904 [a probation condition is invalid if it (1) is unrelated to defendant's

crime; (2) concerns conduct that by itself is not criminal; and (3) regulates conduct not reasonably related to potential criminal acts].)

The People defend the treatment condition on the grounds that it "did not expressly authorize commitment to a residential treatment program" and "it is reasonable to infer that [any] therapy program would focus on substance abuse and related mental health issues" relevant to the drug-related crime for which Zelaya was sentenced. But the trial court gave no such direction to probation. "While the court may well have anticipated" that probation would focus its requirements as the People assume and refrain from ordering residential treatment, this " 'should not be left to implication.' " (*O'Neil*, *supra*, 165 Cal.App.4th at pp. 1357–1358 [prohibiting defendant sentenced on drug-related charges "from associating with known drug users would be entirely reasonable," but order establishing "no limits on those persons whom the probation officer may prohibit defendant from associating with" was overbroad].) And unlike the condition upheld in *Smith*, reading the condition before us in context sheds no light on the treatment contemplated. (See *Smith*, *supra*, 79 Cal.App.5th at pp. 902–903 [trial court's comments that defendant "needed treatment for her substance abuse problem" combined with probation condition providing she "must 'complete a drug and alcohol assessment and follow through with treatment as directed by probation' " made it clear the court had ordered treatment for substance abuse as indicated by assessment].) At the sentencing hearing, the trial court expressed no view on the type of treatment it thought appropriate or expected probation would require. It identified no particular program or service under the individualized plan for Zelaya's support.

We understand that orders requiring compliance with an individualized plan to be developed at a later date may serve legitimate

6

purposes. Additional time and information may frequently be necessary to conduct assessments, identify needs, and match them with accessible programs and services, work that inherently involves "practical difficulties." (*People v. Penoli* (1996) 46 Cal.App.4th 298, 308.) Here, however, the record reveals little about the contemplated individualized treatment plan or its anticipated scope, suggesting that the task was to be left exclusively to the probation department. It is additionally unclear whether the trial court tethered future treatment, services, testing, or counseling to the probationer's needs as determined by an assessment. (See *Smith*, *supra*, 79 Cal.App.5th at p. 903 [trial court's decisions may be informed by assessments and additional information provided by parties].) Without a meaningful standard or guidance from the court, the open-ended order cannot be "saved by permitting the probation department to provide the necessary specificity." (*O'Neil*, *supra*, 165 Cal.App.4th at p. 1358.) Accordingly, we remand for the trial court to determine the type of treatment to which Zelaya may be subject and formulate a meaningful standard to guide the probation department in effectuating the ordered treatment conditions, if any.[3] This guidance must be designed to avoid improper delegation of judicial authority. (*Smith*, p. 903.) Where a probationer's needs have not yet been determined or assessed, the guidance should also provide the probationer with adequate notice of the individualized treatment plan process and the scope of possible outcomes with which the probationer must either comply or ask the court to modify.

## B.  Stay-away Order

Zelaya contends the condition requiring him to stay away from the Tenderloin neighborhood is unconstitutionally vague and overbroad. "A

---

[3] Given this ruling, we need not address Zelaya's argument that the present treatment condition is unconstitutionally vague.

probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness." (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.) A condition "that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*Ibid.*)

The People concede the stay-away condition is vague in that the trial court both adopted a prior condition encompassing "the area bounded by Larkin, Geary, Stockton and Market" and inconsistently ordered Zelaya to avoid the area bordered "by O'Farrell Street, Jones, Market and Van Ness" going forward. Combined, these boundaries cover a substantial area within the city. We further observe that neither of the stay-away areas includes the intersection where Zelaya was arrested in this case, and the probation department recommended a narrower condition focused on intersections near Zelaya's arrests. On remand, the trial court shall revisit and clarify the appropriate boundaries of the stay-away condition.

The People also concede the stay-away condition is overbroad to the extent it prohibits Zelaya from accessing courts and other public buildings within the stay-away zone. We agree—and we agree with Zelaya that the stay-away condition is overbroad in other respects as well.

Probationers "retain their constitutional right to travel," though "reasonable and incidental restrictions on their movement are permissible." (*People v. Moran* (2016) 1 Cal.5th 398, 406.) "[E]ven where restrictions are justified by a demonstrated nexus to the case," a stay-away condition should " ' "allow for lawful travel through the area of restriction and for access to the area for legitimate purposes." ' " (*In re E.O.* (2010) 188 Cal.App.4th 1149,

1154–1155, italics omitted; see also *People v. Padilla-Martel* (2022) 78 Cal.App.5th 139, 157 [trial court properly denied injunction covering the entire Tenderloin neighborhood that could unnecessarily prevent defendants "from accessing public transit[,] health and social services," and other resources]; *In re White* (1979) 97 Cal.App.3d 141, 144, 147 ["blanket prohibition against being in a designated area of Fresno 'anytime, day or night' " was overbroad, although it concerned a major area for prostitution].)

The Tenderloin neighborhood is centrally located within the City of San Francisco. Major transit lines pass through it. In this case, barring Zelaya from crossing the neighborhood for transportation is more than an incidental restriction on his right to travel. (See *In re E.O.*, *supra,* 188 Cal.App.4th at p. 1155 [disapproving stay-away condition that could be violated by merely passing by the prohibited location in transportation]; *In re White, supra,* 97 Cal.App.3d at p. 147 [same].) A condition requiring Zelaya to avoid a particular neighborhood or area, if such is revisited on remand, must be tailored to accommodate the probationer's right to travel and to access the area for legitimate purposes.

## III. DISPOSITION

The matter is remanded to the trial court with directions to clarify and tailor the probation conditions that Zelaya comply with an "individualized treatment plan" and avoid the Tenderloin neighborhood, consistent with this opinion. In all other respects, the judgment is affirmed.

SMILEY, J.

WE CONCUR:

BANKE, ACTING P. J.

LANGHORNE WILSON, J.

A170031
*People v. Zelaya*